fied, to resort to the Supreme Court for the appointment of a substituted trustee, even in case of the death of the sole surviving trustee. Royce v. Adams, 123 N. Y. 402, 25 N. E. 386; Conant v. Wright, 22 App. Div. 216, 48 N. Y. Supp. 422, affirmed 162 N. Y. 635, 57 N. E. 1107; Matter of Russell's Estate, 65 Hun, 619, 19 N. Y. Supp. 743; Matter of Valentine, 3 Dem. 563; Matter of Brady, 58 Misc. Rep. 108, 110 N. Y. Supp. 755; Matter of Chase, 40 Misc. Rep. 616, 83 N. Y. Supp. 62.

As already pointed out, if a trustee appointed by the Supreme Court could account in the Surrogate's Court and there be discharged, his bond would still remain in force, and the only way that it could be gotten rid of and the sureties thereon released would be by a new proceeding in the Supreme Court. Such result and such conflict of authority should be avoided if possible. Matter of Hazard, supra. It is true, as contended, that the Hazard Case simply holds that the administrator of a deceased testamentary trustee appointed by the Supreme Court cannot be compelled to account in the Surrogate's Court, under the literal interpretation of section 2606 of the Code of Civil Procedure, but, as was pointed out in the opinion, if the Surrogate's Court could have compelled the decedent to account, there is no apparent reason why section 2606 should not have been worded so as to permit the same court to compel his administrator to account, and this indicates, as it seems to me, it was not intended by the other provisions of the Code to confer such power upon the Surrogate's Court.

It may be conceded, as intimated, that under section 2802 a trustee appointed by the Supreme Court may file an intermediate account and annually render and settle his accounts in the Surrogate's Court, but I am of the opinion that is the extent of the jurisdiction conferred by that section upon the Surrogate's Court. Such court has not the power to remove a testamentary trustee appointed by the Supreme Court, accept his resignation, compel him to account, or finally discharge him.

I am of the opinion, therefore, that the testamentary trustee appointed by the Supreme Court should, upon the termination of his trust, account to that court and be discharged by it, and for this reason the learned surrogate properly refused to entertain the proceeding.

The order appealed from should be affirmed without costs to either party.

INGRAHAM, P. J., and SCOTT and DOWLING, JJ., concur. CLARKE, J., dissents.

---

### SHUBERT v. SONHEIM.

(Supreme Court, Appellate Division, First Department. June 3, 1910.)

1. LANDLORD AND TENANT (§ 22*)—CONTRACT FOR LEASE—CONSTRUCTION—BREACH.

Defendant's testator contracted to lease to plaintiff a theater to be erected, in the same form as a lease plaintiff then had of another theater, except that the rental was to commence when the theater was completed and was to be payable quarter-annually in advance. The contract also

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

provided that if testator should fail to carry it out, or fail to secure plaintiff a lease of the theater as agreed, he would pay plaintiff $25,000 liquidated damages. The original agreement did not provide for an advance payment or deposit as security that plaintiff would execute the lease; but this was covered by a subsequent agreement, by which plaintiff agreed to deposit $26,400, to be held in escrow by a depositary as security for the rent, plaintiff receiving interest thereon. During negotiations for the selection of a depositary, appointments were made with a banker with whom the money was to be deposited; but these were not met by testator, who thereupon leased the theater to others on more favorable terms. *Held*, that the deposit was solely for the benefit of decedent, which he could waive, and that the binding force of the agreement was not suspended until the deposit was made, and hence, testator having put it out of his power to perform the contract, plaintiff was relieved from making the deposit or tendering the money before suing testator's executor for breach of contract.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 55–59; Dec. Dig. § 22.*]

2. DAMAGES (§ 79*)—BREACH OF CONTRACT—LIQUIDATED DAMAGES OR PENALTY.

Where a contract to execute a theater lease to plaintiff provided for payment of $25,000 as liquidated damages in case of decedent's failure to procure the lease for plaintiff, it appearing that plaintiff might have sustained very large damages, which could not be proved with sufficient definiteness to warrant a recovery thereof in case of breach, it was a proper case for an agreement for liquidated damages, and the amount so agreed on would be treated as liquidated damages, and not a penalty.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 164–169; Dec. Dig. § 79.*]

3. DAMAGES (§ 76*)—LIQUIDATED DAMAGES—REQUISITES.

It is not essential to the validity of a liquidated damage clause in a contract that it should be reciprocal.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 154, 155; Dec. Dig. § 76.*]

4. DAMAGES (§ 79*)—LIQUIDATED DAMAGES—ACTUAL DAMAGES—DETERMINATION.

Where decedent contracted to lease to plaintiff a theater to be constructed, there was no necessity for an agreement for liquidated damages in case of plaintiff's refusal to take the lease, as decedent's damages could be readily measured, and consisted of the difference between the amount which plaintiff agreed to pay and the amount which decedent could obtain therefor.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 164–169; Dec. Dig. § 79.*]

Appeal from Trial Term, New York County.

Action by Lee Shubert against Leopold Sonheim, as executor, etc. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, LAUGHLIN, and DOWLING, JJ.

Eugene Sondheim, for appellant.

Max D. Steuer (William Klein, on the brief), for respondent.

LAUGHLIN, J. This action was brought to recover damages for the breach of a contract in writing made between the plaintiff and the defendant's testator, Meyer R. Bimberg, on the 24th day of July,

1905, as amended on the 26th day of the same month. By the original contract, so far as material to the question presented for decision, the decedent agreed to lease to the plaintiff a theater to be erected by him at the northwesterly corner of Forty-Fifth street and Seventh avenue, according to plans which were submitted to and approved by the plaintiff before the agreement was made. The agreement provided that the lease was to be in the same form and of the same force and effect as a lease which the plaintiff then had of the Lyric Theater, except that the rental was to commence when the theater was completed and accepted by the plaintiff, and was to be $40,000 per annum for the period of 15 years thereafter, payable quarter-annually in advance. On the day the decedent made the original agreement with the plaintiff, an agreement between the decedent and one Tracy, who was the owner of a leasehold from the trustees of Henry Astor of the premises on which the theater was to be built, and one Thomas, was made for the purpose of forming a corporation to be known as the Long Acre Square Theater Company, with a view to having an agreement made between Tracy and the theater company for a sale of Tracy's lease to the company, and to having the theater company enter into an agreement with the decedent for the construction on the premises of a theater and office building for the sum of $243,500, according to the plans and specifications to which reference has been made.

The recovery by the plaintiff has been under a liquidated damage clause in the original agreement between him and the decedent, in which the latter was the party of the first part, which is as follows:

"The party of the first part expressly covenants and agrees that, should he fail to carry out the terms and conditions of this agreement on his part to be performed, and should he fail to give the party of the second part hereto a lease of the said premises, or should he fail to secure for the same party of the second part a lease of said theater in accordance with the terms of this agreement, that then and in that event he agrees to pay unto the party of the second part the sum of twenty-five thousand ($25,000) dollars, which is hereby agreed upon as liquidated damages for the breach of this agreement; it being distinctly understood and agreed that the amount of damage which the party of the second part may secure by reason of the breach hereof cannot be estimated or determined, hence this figure is arrived at, which is not a penalty, but is expressly agreed upon as such liquidated damages."

On the 27th day of July, three days after the original agreement between the plaintiff and the decedent was made, negotiations were opened by the architect, who represented the decedent in the construction of the building, for a lease of the theater to the firm of Wagenhals & Kemper, and on the 16th day of August thereafter a formal agreement was made by the decedent and Tracy with said firm to lease the theater to it. This agreement was succeeded by one more definite on the 24th day of August, 1905, and on the 5th day of September thereafter, by the direction or consent of the decedent, a formal lease of the theater was made by the theater company, which had been incorporated, to said firm, on which an advance payment of $40,000 was made, and three days later a formal agreement was executed between the lessee and decedent, by which the latter became a partner with them in the enterprise and entitled to one-third of any

profits madè under the lease. This put it beyond the power of the decedent to perform his contract with the plaintiff. The original agreement between the plaintiff and the decedent contained no provision for an advance payment or a deposit as security that the plaintiff would execute the lease. It is evident that the decedent intended that it should contain such a provision, and that it was at least discussed between the parties and understood that the lessee was to make some advance payment. By said agreement between Thomas, Tracy, and the decedent it was evidently contemplated that an advance payment would be obtained from the tenant of the theater to be procured by the decedent, for it contains a provision with respect to payments to be made to the decedent on the contract which it was contemplated would be made between him and the theater company as follows:

"Payments to said Bimberg, as contractor, are to be made as follows: If said Bimberg shall tender to the theater corporation an offer, made by some person or corporation satisfactory to the corporation, to lease the theater portion of said building for an annual rental of not less than $40,000, the corporation shall execute such a lease to the proposed lessee, one of the terms of which lease shall provide for an advance payment, the amount of which, not to exceed $40,000, when received in cash by the corporation, shall be paid to said Bimberg on account of the contract price of $243,500."

Two days after the original agreement was made the decedent had an interview with the plaintiff and with one Klein, the attorney for the plaintiff, who drew the original agreement, and as a result of this interview the supplemental agreement was made in the form of a letter from the plaintiff to the decedent as follows:

"In addition to the terms contained in our agreement of July 24th, the following shall become part and parcel of said agreement: 'I am to deposit the sum of $26,400, I to secure interest thereon, however, in escrow, to be turned over to the person or corporation holding the lease of the property in said agreement named, on the turning over of the theater proper to me, same to remain at said times as security for the rent.'"

It is contended in behalf of the appellant that compliance on the part of the plaintiff with this supplemental agreement was a condition precedent to his right to the lease. It is conceded that the money was not deposited as contemplated. The evidence, however, fairly sustains the claim of the respondent that his omission to deposit the money was owing to the failure on the part of the decedent to agree with him with respect to the terms and conditions under which the money should be deposited and withdrawn, and that pending negotiations with respect thereto the theater company having determined to exact an advance payment of $40,000 on the lease to be made of the theater, which advance payment plaintiff would not make, and, more favorable terms having been offered by the firm of Wagenhals & Kemper, the decedent decided to give the lease to that firm.

It will be observed that the supplemental agreement of July 26th does not designate a depositary. Immediately after the supplemental agreement was signed the plaintiff manifested readiness to make the deposit as soon as they agreed upon a depositary, and thereupon an appointment was made by telephone with President Schlesinger of the Mechanics' & Traders' Bank, by which the parties and Attorney Klein were to call at the bank that afternoon and arrange to have Schle-

singer or his bank become the depositary and agree upon the details with respect to depositing and withdrawing the fund. The undisputed evidence shows that the plaintiff had more than sufficient funds on deposit in various banks with which to make this deposit in escrow, and was ready and willing to perform on his part, and that he and his attorney were ready and willing to meet at the time and place specified, and that his attorney did keep the appointment, but that the decedent postponed it, and evidently notified the plaintiff in advance of the hour. Within a day or two thereafter at least one, and some of the evidence indicates that two, definite appointments were made between the parties to meet at the same place and for the same purpose. The president of the bank was willing to receive the money in escrow; but it was contemplated and intended by the parties that a formal agreement should be made between them and the depositary with respect to the conditions upon which the money should be held and withdrawn, and no rate of interest to be paid by the depositary had been agreed upon. The decedent failed to keep the second, or second and third, appointments, and assigned as a reason that he had received a more favorable proposition for the lease of the premises, and subsequently refused to execute the lease to the plaintiff, and authorized its execution to the other firm as herein stated. It will be observed that negotiations for leasing the theater had been opened while the decedent had an appointment or appointments to meet plaintiff at the bank and agree upon a depositary.

The learned counsel for the appellant contends that, if the agreement with respect to the deposit in escrow was not sufficiently definite and required a further agreement between the parties, then until such agreement was made the contract had not become binding, and that, if it was sufficiently definite without further agreement, then it was the duty of the plaintiff to make the deposit and to notify the decedent thereof, notwithstanding the decedent's failure to keep his appointment for a conference concerning the deposit. We are of opinion that the agreement was binding upon both parties, and that its becoming effective was not dependent upon a further agreement concerning the depositary. The deposit was solely for the benefit of the decedent. He could enforce the provision or waive it as he saw fit. If the parties had been unable to agree with respect to a depositary, that would not have relieved the plaintiff from making the deposit. It would still have been the duty of the plaintiff to have made the deposit within a reasonable time, by placing the money in escrow with some responsible depositary and giving the decedent notice thereof, and this the decedent could have exacted. Instead of this, the parties originally endeavored to do what was intended, namely, to agree upon a depositary, and to meet together and arrange more definitely with respect thereto. The conduct of the decedent in failing to keep the appointments for this purpose, and in opening negotiations with the other firm for leasing the theater to it, and finally making formal agreements for thus leasing the theater, and having the lease executed within about six weeks, fully relieved the plaintiff from making the deposit. It may be that, if the decedent had not put it out of his power to perform his agreement, it would have been the duty of the

plaintiff to have made or formally to have tendered the deposit in escrow; but in the circumstances the plaintiff had a reasonable time after the decedent failed to keep his appointments within which to do this, and before the lapse of such period the decedent had repudiated the contract and put it out of his power to perform, and a deposit or a tender of a deposit in escrow would then have been a useless ceremony.

It is also claimed in behalf of the appellant that the conduct of the parties shows that they did not regard the agreements as binding until such time as the deposit should be made, and that plaintiff by subsequently negotiating with the theater company for the lease waived · his right, or became estopped from asserting it against decedent. There is no merit in this point. The lease was to be made by the theater company, and plaintiff was desirous of obtaining it. He had a right to assume that decedent waived the deposit until the time of making the lease, and he was willing to deposit with or advance to the company the amount he had agreed to deposit in escrow, but not $40,-000, the amount the company wanted, when it found it could get it of another.

The only other question of importance presented by the appeal arises on the appellant's contention that liquidated damages cannot be recovered. This claim is based upon the theory that the agreement in that regard is in the nature of a penalty or forfeiture. We are of opinion that this was a proper case for an agreement for liquidated damages. It is manifest that the plaintiff might have sustained very large damages, which could not be proved with sufficient definiteness to warrant a recovery thereof, if he relied, throughout the period occupied by the construction of the building, on obtaining a lease of this theater, and then did not receive it. Counsel for the appellant attempts to make an argument against the enforcement of this liquidated damage clause, based upon the fact that it is not reciprocal. It is not essential to the validity of a liquidated damage clause that it should be reciprocal. Moreover, there was no necessity for an agreement with respect to liquidated damages in case of a refusal of the plaintiff to take the lease. The damages of the decedent could be readily measured. They would have consisted in the difference between the rent which the plaintiff agreed to pay and the amount which the decedent could obtain for the theater. Interest on the liquidated damages was also properly recovered.

It follows, therefore, that the judgment should be affirmed, with costs. All concur.