DOWNTOWN HARVARD LUNCH CLUB, Plaintiff, *v.* RACSO, INC.,
Defendant.

Supreme Court, Trial Term, New York County, October 24, 1951.

*William S. Beinecke* and *Edward J. Madden* for plaintiff.

*Albert Felix* and *Allen S. Stim* for defendant.

WALTER, J. A tenant here seeks damages for an alleged breach of his lease by the landlord. The first question is whether or not there was a breach. If so, a second question will be whether a provision in the lease operates to limit plaintiff's recovery to $2,000.

By written lease made March 15, 1948, defendant leased to plaintiff, for a term of three years from April 1, 1948, to March 31, 1951, at an annual rent of $8,000, payable monthly in advance, certain space on the second floor of the building at the southwest corner of William and Liberty Streets to be used and occupied for a lunch club by plaintiff's members and their guests from 11:30 A.M. to 3:00 P.M. Mondays to Fridays inclusive and between 3:00 P.M. and 9:00 P.M. for not more than six special events during each calendar year.

Defendant agreed (a) to sell to plaintiff's members and their guests, at such premises at the times stated, food and beverages of such kind and style as defendant shall deem suitable and proper for a noonday cafeteria lunch and at such prices as defendant may determine; (b) to prepare and serve such food and beverages in cafeteria or buffet style· in a suitable and convenient manner for plaintiff's members and guests to partake thereof; (c) to provide busboys, counter-men, dishwashers and such employees as may be required for the removal of refuse and rubbish to keep the premises clean. Defendant was under no obligation to provide waiters for tables, plaintiff being required to take the food and beverages " cafeteria or buffet style " and to furnish its own chairs, tables, glassware, linen (if any), china, and silverware, and such waiters or waitresses (if any) as it may desire.

The lease provides (Par. NINETEENTH) that defendant shall not be liable for any failure or delay in furnishing food or beverages for causes beyond its control, or for any failure of defendant's landlord to comply with its obligations, but upon any continued failure by defendant to furnish food and beverages, as herein provided, for more than thirty consecutive days plaintiff shall have the option to terminate the lease by giving written notice to defendant after such thirty-day period and during a continuance of such failure or delay, and in such event the lease shall terminate, and if plaintiff shall ·have complied with all its obligations under the lease, defendant will

pay to plaintiff upon plaintiff's vacating the demised premises the sum of $2,000.

Plaintiff spent nearly $2,600 in changing and decorating the demised premises to make them suitable for its occupancy, and spent about $2,400 for furnishings for the premises; and the food, beverages and service supplied by defendant were at least reasonably satisfactory until the fall of 1949, until which time defendant supplied two busboys, two countermen, and a cashier.

In the fall of 1949 defendant reduced to one busboy and one counterman, and upon occasions it supplied no help other than a cashier. This resulted in service extremely unsatisfactory to plaintiff and its members and their guests. Soiled dishes were not removed from the tables with reasonable promptness, there was delay in securing food, and the walls, floors, tables and chairs were not kept in the desired state of cleanliness. Plaintiff protested on several occasions, but defendant did nothing to remedy the conditions complained of and its president bluntly stated that he would do nothing to remedy them; and on February 9, 1950, plaintiff wrote defendant asserting that defendant had committed a substantial and continuing breach of the lease for a period in excess of thirty days, and advising defendant that, because of such breach, plaintiff elected to terminate the lease as of 11:59 P.M. of February 28, 1950.

Plaintiff then vacated the premises on February 28, 1950.

It sold for $510 dining room equipment for which it had paid $2,000, and has incurred an expense of $400 for storing other furniture and furnishings which it had placed in the premises. Plaintiff was also unsuccessful in its efforts to find other quarters, and because of its inability to supply its members with luncheon facilities and to avoid wholesale resignations, it remitted membership dues for the year beginning April 1, 1950, which remission has resulted in its not receiving $6,960 which it, in all probability, would have received if defendant had performed the lease.

Plaintiff contends that the $6,960 of remitted dues, $260 of the storage charges, and the $1,490 difference in value between the furniture new and the furniture sold, constitute the damage it has sustained in consequence of defendant's breach, and it asks judgment for those sums plus the $2,000 provided for in paragraph NINETEENTH of the lease.

I find that defendant's omissions constituted such a failure to furnish food and beverages as provided for in the lease as

justified plaintiff in terminating the lease and vacating the premises. I find, also, that some loss of dues, some loss on a resale of furniture, and some expense for storage charges, are items which must be deemed to have been within the contemplation of the parties as natural and probable consequences of such breach of the lease by defendant as it actually committed; but I do not deem it necessary to decide whether the figures I have given constitute the actual amounts of those items which plaintiff would be entitled to recover if the lease contained no provision for a payment of $2,000, because I reach the conclusion that the provision for that payment is a provision for liquidated damages which limits plaintiff's recovery to that sum.

Invariably, so far as my research discloses, contractual provisions for the payment of a specified sum of money in the event of a breach have been treated as being either a provision for a penalty or a provision fixing, stipulating and agreeing upon what sum shall be paid and accepted as satisfaction for the breach, or, more colloquially, as a provision for liquidated damages. Where found to be a penalty, the sum is not recoverable because it is a penalty, and the aggrieved party is left to a recovery of such actual damage as he can prove. Where found to be a provision for liquidated damages, the sum specified is recoverable and measures and limits the amount of the recovery. The principal factors guiding decision as to whether a particular provision is one or the other are the certainty or uncertainty as to what damage will flow from a breach, the ease or difficulty of ascertaining and establishing such damage, and the reasonableness of the relation between the sum stipulated and the actual damage. If it be certain and clear, for example, that breach will cause damage of X dollars, a provision for the payment of more than X dollars clearly is a penalty. If it be uncertain what amount of damage a breach will cause, and if it will be difficult to ascertain and establish what that amount is, considerable leeway is allowed the parties in agreeing in advance that the damages shall be deemed to be a certain sum; but even in such cases great disparity between the actual damage and the agreed sum will lead to the conclusion that the agreed sum is in reality a penalty rather than an actual agreement as to what the damages shall be deemed to be. In most of the cases in which disparity between the actual damage and the agreed sum has led to the conclusion that the agreed sum is a penalty, the agreed sum was much greater than the actual damage; but there is authority to the

effect that where the agreed sum is vastly below the actual damage, it likewise may be disregarded and the aggrieved party allowed to recover his actual damages (McCormick on Damages, § 149, pp. 606, 608; *Bonhard* v. *Gindin,* 104 N. J. L. 599; *Weatherford* v. *Adams,* 31 Ariz. 187, 197; *McCelvy* v. *Bell,* 6 S. W. 2d 390 [Tex.]; *Banta* v. *Stamford Motor Co.,* 89 Conn. 51).

In the case at bar the amount of damage plaintiff would suffer as a result of a breach by defendant was not in any way certain. It naturally would vary according to the time of the breach, the availability of other luncheon facilities at the time of breach, and the amount then obtainable for used furniture. Neither was it at all clear that it would be easy for plaintiff to prove those damages. This, therefore, is the kind of case in which the parties reasonably and properly could decide to estimate and fix in advance a stated sum which would be regarded as proper compensation for a breach, or, in other words, the amount of damage to be paid in case of a breach; and while the sum fixed seems now to be an underestimate, there is not such great disparity or unreasonableness as would justify me in treating the provision as a penalty. Disparity or unreasonableness must be judged, not by the loss which actually ensues, but by the situation as it existed at the time of the making of the contract (McCormick on Damages, § 150, p. 608), and these parties then very well may have believed it just as likely that the actual damage would be somewhat under $2,000 as that it would be over that amount. If, for example, other premises had been available at the time of the breach, the probability is that no dues would have been remitted. (For general discussions of the subject, see McCormick on Damages, *supra;* 1 Sedgwick on Damages [9th ed.], §§ 389–427; 1 Sutherland on Damages [4th ed.], §§ 279–299; Restatement, Contracts, § 339; 15 Am. Jur., Damages, §§ 240–260, pp. 671–694; Note, 106 A. L. R. 292–318; 17 C. J., Damages, §§ 231–267, pp. 931–968, and 61 Harv. L. Rev., pp. 128–131.) Important New York cases are *Mosler Safe Co.* v. *Maiden Lane Safe Deposit Co.* (199 N. Y. 479, 485); *Caesar* v. *Rubinson* (174 N. Y. 492), and *Shiell* v. *M'Nitt* (9 Paige Ch. 101, 105, 106).

The contention of plaintiff's counsel that even though the $2,000 provision be regarded as one for liquidated damages it does not limit plaintiff's recovery, seems to me wholly untenable. I cannot discover any theory or principle upon which the contention can be thought to rest.

In *McKegney* v. *Illinois Sur. Co.* (180 App. Div. 507) which has been cited by plaintiff's counsel, the contract contained two entirely separate, distinct, and independent provisions, one making a builder liable for cost of completion in case the owner had to complete by another contractor, and a second providing for liquidated damages of a specified amount per day for failure to complete within a stipulated time, whereas the contract here contains a single provision for $2,000 in the event of the happening of the exact thing which did happen, and it is impossible to hold that the provision is one for liquidated damages and yet does not limit the recoverable damage to the sum stipulated (see *Stone & Gravel Co.* v. *United States,* 234 U. S. 270, 280).

The notion that plaintiff can recover both the $2,000 and the actual damage seems to me likewise palpably unfounded.

There is some authority to the effect that interest cannot be added to a sum found to be liquidated damages, but that seems to me to be wrong in principle because allowing interest is not adding something to the agreed damage, but allowing damage for the different and distinct wrong of not paying the agreed sum when it was due, and interest was allowed in *Shubert* v. *Sondheim* (138 App. Div. 800, 806).

Plaintiff accordingly is entitled to judgment for $2,000, with interest thereon from February 28, 1950.

As I find that plaintiff was justified in vacating the premises on February 28, 1950, it follows that it was not obligated to pay rent after that date and defendant's counterclaim is accordingly dismissed.

I direct the entry of judgment accordingly.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.