OPINION OF THE COURT
Phyllis Orlikoff Flug, J.
Plaintiffs, husband and wife, each contracted with defendant Tourlite International (Tourlite) for a two-week trip to Greece *376 to begin on June 28, 1985. The tour was sponsored by the impleaded third-party defendant B’Nai B’Rith and air transportation was to be provided by impleaded third-party defendant National Airlines.
On June 14, 1985 a hijacking occurred at the Athens International Airport in Greece, and subsequently President Reagan issued a warning to all Americans and advised against travel through that airport. Plaintiff heeded that warning and called defendant to cancel her trip and request a refund.
Tourlite, as the tour operator, had contracted with National Airlines for the chartered flight. After checking with the F.A.A., which confirmed the carrier’s obligation to operate the flight as scheduled, National departed on June 28, 1985 at 80% capacity.
Tourlite, relying on the written contract and notices in its brochure, refused the plaintiffs’ request for any refund. The contract contains a "Cancellation and Refund” clause wherein a schedule of "cancellation penalties” is listed. The amount of the "penalty” is determined by the number of days prior to departure notification of cancellation is received by Tourlite. Actual amounts range from $50 per person (notification 35 or more days prior) to $200 per person (notification 34 to 22 days prior) to a total forfeiture (notification 21 days or less prior).
There is no question as to the existence of the contract nor of defendant’s ability to fulfill its obligations thereunder. Consequently the issue before the court is the validity of this section of the contract, whether this clause is a valid and enforceable liquidated damages clause or a penalty.
Use of the word "penalty” by Tourlite in describing the amount of money passengers would forfeit upon cancellation is not conclusive, and its use does not prohibit inquiry by the court into the basic intent behind Tourlite’s inclusion of the clause in the contract. (Ward v Hudson Riv. Bldg. Co., 125 NY 230.) Did the total forfeiture of the tour price accurately reflect the damages Tourlite thought they would sustain at the making of the contract, or was its use intended to secure the plaintiff’s performance?
Due to the inequitable, or, more precisely the nonexistent, bargaining position of this plaintiff in the "formation” of the contract, as well as the proven ability of this defendant to anticipate its actual damages, this court finds it to be a penalty.
*377 The actual damages in this case were capable, without great difficulty, of precise estimation and the total forfeiture of the ticket price was disproportionate to the probable loss to be suffered by defendant in the event of a cancellation. Accordingly, the clause, as it appears in the contract, will not be enforced. (See, Truck Rent-A-Center v Puritan Farms 2nd, 41 NY2d 420.)
A sum stipulated to be liquidated damages must bear a relationship to the injury suffered as a result of a party’s breach (Meltzer v Old Furnace Dev. Corp., 44 Misc 2d 552; Morgan Servs. v Lavan Corp., 59 NY2d 796).
If the sum is not a fair measure of damages thought to be sustained upon a breach at the making of the contract the aggrieved party may be held to its actual damages (Downtown Harvard Lunch Club v Racso, Inc., 201 Misc 1087; Educational Beneficial v Reynolds, 67 Misc 2d 739).
While Tourlite could reasonably foresee the payment of airfare and cruise tickets on their part whether or not a passenger canceled, they, and only they, were also in a position to know that many other features of the tour (hotel rooms, ground transfers, etc.) would not be utilized and need not be paid for in the event of a cancellation — as well as their actual cost.
Any rationale for the significant increase in "cancellation penalties” by Tourlite from $200 per person for a cancellation on day 22 to a total forfeiture (in excess of $2,500) on day 21 has not been shown to exist. Indeed defendant reserved to itself the absolute right to either cancel any trip or make refunds until 10 days prior to departure, and neither these plaintiffs nor any other passenger had leverage to change these terms more equitably to their own favor.
Since defendant’s testimony at trial indicated only what portions of the total tour price were allocated to each service to be utilized and did not reveal which of these amounts, if any, Tourlite actually paid for, the court will conduct a hearing wherein Tourlite shall produce evidence of actual payments to any third parties involved.
By requiring such showing this court will then be able to render "substantial justice” in this small claims action.