[980 NE2d 940, 957 NYS2d 275]

J. D'ADDARIO & COMPANY, INC., Respondent, v EMBASSY INDUSTRIES, INC., Appellant.

Argued October 11, 2012; decided November 19, 2012

**POINTS OF COUNSEL**

*Rosenberg Fortuna & Laitman, LLP*, Garden City (*David I. Rosenberg* and *Anthony R. Filosa* of counsel), for appellant. I. The Appellate Division erred in holding that the Supreme Court had discretion to deny Embassy Industries, Inc. prejudgment interest. (*Manufacturer's & Traders Trust Co. v Reliance Ins. Co.*, 8 NY3d 583; *Spodek v Park Prop. Dev. Assoc.*, 96 NY2d 577; *John Hancock Life Ins. Co. of N.Y. v Hirsch*, 77 AD3d 710; *Baer v Anesthesia Assoc. of Mount Kisco, LLP*, 57 AD3d 817; *Delulio v 320-57 Corp.*, 99 AD2d 253; *Cantelmo v Knaust*, 206 AD2d 743; *Deutsche Bank Trust Co., Ams. v Stathakis*, 90 AD3d 983; *Brushton-Moira Cent. School Dist. v Thomas Assoc.*, 91 NY2d 256; *Solow v Wellner*, 86 NY2d 582; *Gizzi v Hall*, 309 AD2d 1140.) II. The law of contract damages compels that Embassy

Industries, Inc. be made whole for the separate and distinct wrong of the deprivation of the use of the down payment from the date of the breach of the contract. (*Brushton-Moira Cent. School Dist. v Thomas Assoc.*, 91 NY2d 256; *Spodek v Park Prop. Dev. Assoc.*, 96 NY2d 577; *Lawyers' Fund for Client Protection of State of N.Y. v Bank Leumi Trust Co. of N.Y.*, 94 NY2d 398; *Preston Co. v Funkhouser*, 261 NY 140; *NML Capital v Republic of Argentina*, 17 NY3d 250; *Downtown Harvard Lunch Club v Racso, Inc.*, 201 Misc 1087; *Shubert v Sondheim*, 138 App Div 800, 203 NY 636.) III. The order is judicial legislation under the guise of statutory interpretation. (*Manufacturer's & Traders Trust Co. v Reliance Ins. Co.*, 8 NY3d 583; *Weinberg v D-M Rest. Corp.*, 53 NY2d 499; *Pajak v Pajak*, 56 NY2d 394; *Matter of Metropolitan Life Ins. Co. v Boland*, 281 NY 357; *Bradley v Buffalo, N.Y. & Erie R.R. Co.*, 34 NY 427; *Matter of Lloyd v Grella*, 83 NY2d 537; *Matter of Yong-Myun Rho v Ambach*, 74 NY2d 318.)

*Lamb & Barnosky, LLP*, Melville (*Scott M. Karson* and *Michael F. Mullen* of counsel), for respondent. I. The law in New York is clear that when parties set down their agreement in a clear, complete document, that agreement must be enforced according to its terms. (*Clement v Cash*, 21 NY 253; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157; *Venetoklis Family L.P. v Kora Devs., LLC*, 74 AD3d 1057; *Grace v Nappa*, 46 NY2d 560; *Truck Rent-A-Ctr. v Puritan Farms 2nd*, 41 NY2d 420; *Maxton Bldrs. v Lo Galbo*, 68 NY2d 373; *Lawrence v Miller*, 86 NY 131; *Mitchell v New York Hosp.*, 61 NY2d 208; *T. W. Oil v Consolidated Edison Co. of N.Y.*, 57 NY2d 574; *Rector, Church Wardens & Vestrymen of St. Bartholomew's Church in City of N.Y. v Committee to Preserve St. Bartholomew's Church*, 56 NY2d 71.) II. None of the cases cited by Embassy Industries, Inc. apply here because none involved liquidated damages. (*Spodek v Park Prop. Dev. Assoc.*, 96 NY2d 577; *Prager v New Jersey Fid. & Plate Glass Ins. Co. of Newark, N.J.*, 245 NY 1; *Manufacturer's & Traders Trust Co. v Reliance Ins. Co.*, 8 NY3d 583; *Love v State of New York*, 78 NY2d 540; *Toledo v Iglesia Ni Christo*, 18 NY3d 363; *Gizzi v Hall*, 309 AD2d 1140; *S&S Mgt., LLC v Berk*, 65 AD3d 1031.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

At issue in this appeal is whether the parties' contract language specifying that the seller's "sole remedy" was liquidated

damages and the seller had "no further rights" against the defaulting purchaser, trumps language in CPLR 5001 (a) directing that statutory interest be awarded in a contract dispute. The terms of the contract are controlling here, and thereunder, we hold that defendant Embassy Industries is not entitled to statutory interest.

By real estate contract dated January 13, 2006, defendant Embassy Industries, Inc. (Embassy) agreed to sell commercial real property located in Farmingdale, New York to plaintiff J. D'Addario & Company (D'Addario) for $6.5 million. D'Addario deposited 10% of the purchase price ($650,000), the down payment under the contract, in escrow with Embassy's attorney (the Escrow Agent). The contract provided that the down payment would be held at an interest-bearing account at North Fork Bank in Melville, New York. The contract further stated that the Escrow Agent would hold the down payment until the closing or termination of the contract and "pay over the interest or income earned thereon, if any, to the party entitled to the Downpayment." If the closing did not occur and either party disputed the other's written demand for the down payment, then the Escrow Agent would "continue to hold the Downpayment until otherwise directed by written instructions from Seller and Purchaser or a final judgment of a court of competent jurisdiction."

Negotiating at arm's length and each represented by counsel, the parties agreed in the liquidated damages clause that the seller's "sole remedy" and the purchaser's "sole obligation" would be the $650,000 down payment plus bank-accrued interest. The seller would also have "no further rights or causes of action" against the purchaser in the event of a default. The liquidated damages clause provided that

> "[i]f Purchaser defaults, the entire damages which Seller will thereby sustain cannot be exactly determined; therefore, it is agreed that in the event of any default by Purchaser, all amounts paid by Purchaser as a deposit . . . shall be considered as liquidated damages . . . and be permanently retained by Seller as Seller's sole remedy and Purchaser's sole obligation in any and all events. . . . Seller shall retain such amounts as liquidated damages and no further rights or causes of action shall remain against Purchaser, nor shall Purchaser have any further rights under this Contract or otherwise, with respect to Seller . . . ."

Subsequent to the signing of the contract, Embassy scheduled a time-of-the-essence closing for July 31, 2006. On July 21, 2006, D'Addario purported to terminate the contract and did not attend the convened closing on July 31. D'Addario believed it had timely and effectively terminated the contract by reason of Embassy's inability to certify that groundwater contamination at the site had been addressed to the satisfaction of regulatory authorities. Embassy declared D'Addario to be in default by reason of its failure to appear at the closing and retained D'Addario's $650,000 down payment as liquidated damages pursuant to the contract.

D'Addario commenced the underlying action to recover its down payment, and Embassy counterclaimed, alleging that D'Addario defaulted by failing to appear at the closing. After a non-jury trial, Supreme Court rendered a judgment which awarded Embassy the $650,000 down payment plus 9% statutory interest and costs, for a total of $877,406.

The Appellate Division modified to vacate the award of statutory interest, holding that "Supreme Court improvidently exercised its discretion in awarding statutory prejudgment interest" (*J. D'Addario & Co., Inc. v Embassy Indus., Inc.*, 83 AD3d 1001, 1003 [2d Dept 2011]). Supreme Court then issued an amended judgment directing the Escrow Agent to turn over the down payment and bank-account interest accrued to Embassy.

We granted Embassy leave to appeal (18 NY3d 802 [2011]). The only issue raised is Embassy's entitlement to statutory prejudgment interest, and we now affirm, although on different grounds from those stated by the Appellate Division.

In breach of contract cases where parties do not specify the exclusive remedy, CPLR 5001 (a) requires that statutory interest be paid. CPLR 5001 (a) states that "[i]nterest *shall* be recovered upon a sum awarded because of a breach of performance of a contract" (emphasis added). The plain language of CPLR 5001 (a) "mandates the award of interest to verdict in breach of contract actions" (*Spodek v Park Prop. Dev. Assoc.*, 96 NY2d 577, 581 [2001]). There is no requirement that the breaching party obtain some benefit from the wronged party's money for statutory interest to be paid. The principle behind prejudgment interest is that the breaching party should compensate the wronged party for the loss of use of the money (*see NML Capital v Republic of Argentina*, 17 NY3d 250, 266 [2011]). We have previously stated that "interest is not a penalty" (*Love v*

*State of New York*, 78 NY2d 540, 544 [1991]), and the purpose of ordering statutory interest on amounts in escrow is not to punish the breaching party. The breaching party is required to pay interest despite lacking possession or enjoyment of the property in order "to make [the] aggrieved party whole" (*Spodek v Park Prop. Dev. Assoc.*, 96 NY2d at 581).

This long-recognized principle is not in conflict with our holding in *Manufacturer's & Traders Trust Co. v Reliance Ins. Co.* (8 NY3d 583 [2007]), an equitable interpleader action where we ruled that the trial court did not have discretion to award statutory interest. In *Manufacturer's*, we held that in an interpleader action where the losing co-claimants were not guilty of any breach, no sum is "awarded" under CPLR 5001 (a) against those who lose (*see id.* at 589). No judgment was entered against the losing claimants in *Manufacturer's*, whereas in a breach of contract case, interest must be paid by the party against whom judgment is entered. We recognized a "fundamental objection" to awarding statutory interest in *Manufacturer's* because the losing claimants were "not . . . found to have breached any contract," not because the co-claimants received no benefit from the disputed funds while it was held in escrow (*see id.*).

In this case, however, Embassy and D'Addario agreed at the time of contract formation that the "sole remedy" for Embassy and the "sole obligation" of D'Addario in the event of a purchaser default would be an award of the down payment. Moreover, the parties agreed that the seller would have "no further rights" against the purchaser once the down payment was paid as liquidated damages. The contract required that the down payment be placed in an interest-bearing account, so that the party entitled to the down payment would receive compensation for the deprivation of its use of the money in the form of bank-accrued interest. Embassy's contention that the contract never expressly mentioned statutory interest, and that therefore their right thereto was not waived, is unpersuasive. The use of the terms "sole remedy," "sole obligation," and "no further rights" by the parties, together with the provision for interest on the escrowed sum, was sufficiently clear to establish for purposes of this transaction that interest paid at the statutory rate was not contemplated by the parties at the time the contract was formed. We held in *W.W.W. Assoc. v Giancontieri* (77 NY2d 157, 162 [1990]) that "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." Regardless of what CPLR 5001 (a)

customarily requires in terms of statutory interest for breach of contract cases, the parties here decided that the amount escrowed should be the exclusive remedy to the wronged party. As we stated in *Town of Orangetown v Magee* (88 NY2d 41, 54 [1996]), "parties to a civil dispute are free to chart their own course and, unless public policy is affronted, they may fashion . . . how damages are to be computed without interference by the courts." In many cases, we have allowed parties to agree to give up statutory or constitutional rights in a contract, as long as public policy is not violated. Therefore, the exclusive remedy that the parties fashioned here should be honored.

In *Manufacturer's*, we chastised the parties for the "inexplicable failure by all concerned to arrange for the payment of a meaningful interest rate on the escrowed money" (8 NY3d at 590). Here, the parties placed the down payment in an interest-bearing account as the contract required. It may be worth repeating, however, that parties should make it a matter of routine to decide in advance whether statutory interest is to be paid on amounts held in escrow. A contract clause providing that no statutory interest would accrue during an escrow dispute would have prevented this litigation altogether. But the language that was used, that the down payment on the property was to be the "sole remedy" for a breach by the purchaser and that the seller had "no further rights" against purchaser, is sufficiently clear in the end to reach the same result. The contract language will always control, as it should in this case.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

GRAFFEO, J. (dissenting). I respectfully dissent because I disagree that the liquidated damages provision in the parties' contract vitiates the prejudgment interest provided in CPLR 5001 (a).

In a breach of contract action, an award of prejudgment interest is required under CPLR 5001 (a) ("[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract") and the accrual of interest is mandatory (*see Matter of Syquia v Board of Educ. of Harpursville Cent. School Dist.*, 80 NY2d 531, 536 [1992] [legislature's use of the term "shall" implies "duty, not discretion"]; *see also Gizzi v Hall*, 309 AD2d 1140, 1142 [3d Dept 2003]). As the majority correctly recognizes, "interest is not a punishment arbitrarily levied upon a culpable party" but compensation intended to

make whole the party aggrieved (*Mohassel v Fenwick*, 5 NY3d 44, 51 [2005]; *Spodek v Park Prop. Dev. Assoc.*, 96 NY2d 577, 581 [2001]).

It is common for parties contracting for the sale of real property to agree to limit a seller's damages to the amount of the buyer's down payment (*see e.g. Beagle Devs., LLC v Long Is. Beagle Club No. II, Inc.*, 63 AD3d 607, 608 [1st Dept 2009]; *Hegner v Reed*, 2 AD3d 683, 684-685 [2d Dept 2003]). The primary objective of this practice is to eliminate the purchaser's exposure to more costly potential damages (*see Federal Realty Ltd. Partnership v Choices Women's Med. Ctr.*, 289 AD2d 439, 441 [2d Dept 2001]). Liquidated damages clauses therefore are designed to foreclose causes of action seeking damages for expectation ("benefit of bargain" or lost profits) and reliance ("expenditures made in preparation for performance or in performance") that would otherwise be available to a seller or vendor (*see St. Lawrence Factory Stores v Ogdensburg Bridge & Port Auth.*, 13 NY3d 204, 208 [2009]). Before today, such contractual provisions were not interpreted to bar recovery of statutorily-mandated interest. Indeed, courts awarded prejudgment interest in similar cases in the past (*see Gargano v Rubin*, 200 AD2d 554, 556 [2d Dept 1994]; *Shubert v Sondheim*, 138 App Div 800, 806 [1st Dept 1910]; *Downtown Harvard Lunch Club v Racso, Inc.*, 201 Misc 1087, 1092 [Sup Ct, NY County 1951]; *Norris v McMechen*, 135 Misc 361, 363 [Sup Ct, Warren County 1930]). Prejudgment interest should not be viewed as an addition to stipulated damages as the majority seems to imply, but rather, should be viewed as representing compensation "for the different and distinct wrong of not paying the agreed sum when it was due" (*Downtown Harvard Lunch Club*, 201 Misc at 1092). Thus, in the absence of specific terms in the contract excluding prejudgment interest, I would not infer limitations on statutory interest in generic liquidated damages provisions.

Here, the parties' agreement stated that in the event of D'Addario's default, Embassy would be entitled to retain all amounts paid by D'Addario as a deposit.* Yet, the stipulation did not mention statutory interest, much less exclude it. Nor

---

* The contract provided as follows:
   "If [D'Addario] defaults, the entire damages which [Embassy] will thereby sustain cannot be exactly determined; therefore, it is agreed that in the event of any default by [D'Addario], all

does it follow that the parties intended to exempt interest simply because they used the words "sole remedy" and "sole obligation" in the contract. Such language is frequently used in contractual damages clauses to restrict a party's potential remedies and has no bearing on the availability of statutory interest. Similarly, contrary to the majority's assertion, the phrase "no further rights or causes of action" plainly refers to the foreclosure of claims for other categories of damages, not prejudgment interest. In short, nothing in this boilerplate language suggests that the parties contemplated that interest would not accrue if D'Addario chose to contest Embassy's claim to the down payment.

The entitlement to interest under CPLR 5001 (a) should also not depend on whether the down payment was placed in an escrow account managed by Embassy's counsel during the four-year pendency of this litigation. Under the terms of the parties' agreement, the attorney could not transfer the down payment to Embassy unless both Embassy and D'Addario agreed to release the funds. By refusing Embassy's demand for disbursement, D'Addario effectively restrained Embassy's use of the money for the remaining duration of the action. That refusal constituted a distinct and separate wrong not covered by the liquidated damages provision and prejudgment interest should have been awarded.

Accordingly, I would modify the Appellate Division order by reversing so much of it as vacated the Supreme Court's judgment granting Embassy statutory interest, order that portion of the judgment reinstated and otherwise affirm.

Judges CIPARICK, READ and SMITH concur with Chief Judge LIPPMAN; Judge GRAFFEO dissents in a separate opinion in which Judge PIGOTT concurs.

Order affirmed, with costs.

---

amounts paid by [D'Addario] as a deposit pursuant to this Contract shall be considered as liquidated damages for such failure or refusal of [D'Addario] to consummate this transaction or for any non-compliance, non-performance, breach or default by [D'Addario], and shall become the exclusive property of, and be permanently retained by [Embassy] as [Embassy's] sole remedy and [D'Addario's] sole obligation in any and all events. . . . [Embassy] shall retain such amounts as liquidated damages and no further rights or causes of action shall remain against [D'Addario] . . . ."