Treasure Is. of Asbury Park Self-Storage, LLC v MBAR Realty, LLC (2023 NY Slip Op 02906)

Treasure Is. of Asbury Park Self-Storage, LLC v MBAR Realty, LLC

2023 NY Slip Op 02906

Decided on May 31, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 31, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
REINALDO E. RIVERA
LARA J. GENOVESI
HELEN VOUTSINAS, JJ.

2020-02219
 (Index No. 707622/16)

[*1]Treasure Island of Asbury Park Self-Storage, LLC, respondent, 
v
MBAR Realty, LLC, et al., appellants.

Braunstein Turkish, LLP, Woodbury, NY (William J. Turkish of counsel), for appellants.
Seyfarth Shaw, LLP, New York, NY (Jonathan P. Wolfert and Owen Wolfe of counsel), for respondent.

DECISION & ORDER
In an action for specific performance of a contract for the sale of real property and for injunctive relief, the defendants appeal from a judgment of the Supreme Court, Queens County (Leonard N. Florio, Ct. Atty. Ref.), entered January 30, 2020. The judgment, upon a decision of the same court dated November 4, 2019, made after a nonjury trial, is in favor of the plaintiff and against the defendants, inter alia, directing the defendants to specifically perform the contract for the sale of real property, permanently enjoining the defendants from, among other things, selling the property to any third party, and dismissing the defendants' counterclaim to retain the refundable portion of the plaintiff's down payment as liquidated damages for breach of contract.
ORDERED that the judgment is modified, on the law and the facts, by deleting the provisions thereof (1) awarding judgment in favor of the plaintiff on the complaint, (2) directing the defendants to specifically perform the contract for the sale of real property, and (3) permanently enjoining the defendants from, among other things, selling the property to any third party, and substituting therefor a provision dismissing the complaint; as so modified, the judgment is affirmed, without costs or disbursements.
In 2014, the plaintiff, Treasure Island of Asbury Park Self-Storage, LLC (hereinafter the buyer), entered into a contract to purchase real property from the defendants, MBAR Realty, LLC, and MBAR #2 Realty, LLC (hereinafter together the sellers). Pursuant to the contract, the buyer paid a down payment, which was deposited in an escrow account, and the remainder of the purchase price was due at the closing. The contract required the sellers to remove, prior to the closing, all items disclosed on a title report on the property, except for certain specified permitted exceptions. The sellers were not required to expend more than $100,000 in complying with that obligation. The title report revealed several nonpermitted exceptions to title.
In March 2015, the parties executed a fourth amendment to the contract (hereinafter the amendment) which provided, inter alia, that "[p]rior to the Closing and as a contingency to Buyer's obligations to close, Buyer shall have obtained approval from the Board of Standards and Appeals (BSA) consistent with" a certain permitted use of the property (hereinafter the permitted use). The amendment further provided that "the Closing shall occur on or about the date that is the earlier of (A) thirty (30) days following the date on which Buyer shall have advised Seller that it has [*2]obtained BSA approval for the Permitted Use or (B) five (5) business days following the date on which Seller shall have served Buyer with a closing notice . . . which closing notice may not be served by Seller prior to April 1, 2016." The amendment also provided that "if Seller shall have served a Closing Notice and the BSA approval for the Permitted Use shall not then have been obtained, Buyer may choose to close in accordance with the Closing Notice or to terminate this Agreement." In the event that the buyer chose to terminate the agreement, the buyer would be entitled to the return of the refundable portion of the deposit. In this regard, the amendment provided that $75,000 of the initial $275,000 deposit would be distributed to the seller and become nonrefundable.
By letter dated March 28, 2016, which was entitled "NOTICE OF DEFAULT - IMMEDIATE ATTENTION IS WARRANTED," the buyer advised the sellers that several nonpermitted exceptions appeared on the title report, and that the sellers were obligated to expend up to $100,000 to cure those exceptions. The letter warned that, by failing to attempt to cure the exceptions, the sellers were in default and that they had 30 days to cure the default.
By letter dated April 1, 2016, the seller responded that it was "prepared to resolve any exceptions within Seller's control to the satisfaction of the title company at or prior to closing." Additionally, the sellers assured that "[t]o the extent that Buyer has agreed to provide Seller with documents required to be executed to cure any additional exceptions prior to Closing, Seller is ready, willing and able to cause the execution of such documents prior to closing." Consistent with the sellers' right to set a closing date under the amendment, the letter set a closing date for April 21, 2016.
By letter dated April 5, 2016, the buyer objected to the sellers' attempt to establish a closing date on the ground that there remained exceptions to title "that are required to be cleared to close," and warned that the sellers had "not expended any sums or efforts with respect to the clearance of title issues that are, in part, the subject of the Notice of Default." The buyer advised that it "expressly reserve[d] the right to pursue an action for specific performance to compel Seller's performance pursuant to the terms of the Agreement," and that "title clearance" was a "condition precedent to the occurrence of Closing."
By letter dated May 5, 2016, the sellers responded by setting a new closing date for June 3, 2016, "time being of the essence," and warning that the sellers would retain the refundable portion of the down payment if the buyer failed to tender performance on that date. By letter dated May 12, 2016, the buyer again rejected the closing date based upon its claim that the sellers had to first clear title issues prior to scheduling a closing date.
By email dated May 24, 2016, the buyer's counsel warned that "we really don't want to file a litigation but, unless you withdraw the [time-of-the-essence] letter (without prejudice), you are leaving us no alternative." That same day, the sellers' counsel responded by email stating, "I will agree to extend the [time-of-the-essence] closing for an additional 2 weeks to get things in order and try to resolve," and that he would "get back" to the buyer's counsel by the end of the week. Two days later, the buyer's counsel emailed, "thank you for the courtesy; this is acceptable. I hope that you can make progress on the title issues in the two week period."
On June 28, 2016, the buyer commenced this action seeking specific performance of the contract of sale and injunctive relief. The sellers interposed an answer with a counterclaim alleging, inter alia, that the buyer breached the contract and seeking to retain the buyer's entire down payment as liquidated damages. After a nonjury trial, the Supreme Court entered a judgment in favor of the buyer and against the sellers, inter alia, directing the sellers to specifically perform the contract, permanently enjoining the sellers from, among other things, selling the property to any third party, and dismissing the sellers' counterclaim. The sellers appeal.
"Where, as here, a nonjury trial is involved, the power of this Court is as broad as that of the trial court, and this Court may render the judgment it finds warranted by the facts, taking into account that in a close case the trial judge had the advantage of seeing the witnesses" (Rha v Blangiardo, 189 AD3d 1098, 1099; see Northern Westchester Professional Park Assoc. v Town of [*3]Bedford, 60 NY2d 492, 499; J. D'Addario & Co., Inc. v Embassy Indus., Inc., 83 AD3d 1001, 1002, affd on other grounds 20 NY3d 113).
"'The elements of a cause of action for specific performance of a contract [for the sale of real property] are that the plaintiff substantially performed its contractual obligations and was [ready,] willing and able to perform its remaining obligations, that defendant was able to convey the property, and that there was no adequate remedy at law'" (Finkelstein v Lynda, 166 AD3d 948, 949, quoting EMF Gen. Contr. Corp. v Bisbee, 6 AD3d 45, 51). "A party seeking specific performance of a contract for the sale of real property is required to establish not only that he or she was ready, willing, and able to close on the scheduled closing date, but also that the other party was in default" (Latora v Ferreira, 102 AD3d 838, 839).
Here, contrary to the Supreme Court's determination, the buyer failed to establish either that it was ready, willing, and able to close on a scheduled closing date, or that the sellers were in default. First, at the time of the commencement of the action in June 2016, the buyer had not obtained BSA approval for its planned construction of a storage facility on the property. Even so, the amendment allowed the sellers to serve a closing notice on the buyer as early as April 1, 2016, and force the buyer to choose either to close without the BSA approval or terminate the agreement and obtain a return of the refundable portion of its down payment. At the trial, the buyer failed to establish that, as of the date of the commencement of this action, it was ready, willing, and able to close despite not obtaining BSA approval for its planned construction.
Moreover, "[i]n order to place the [seller] in default for a claimed failure to provide clear title, the [buyer] normally must first tender performance himself [or herself] and demand good title" (R.C.P.S. Assoc. v Karam Devs., 258 AD2d 510, 511 [internal quotation marks omitted]; see Vision Enters., LLC v 111 E. Shore, LLC, 92 AD3d 868, 870). "Tender of performance is excused only where the title defect is not curable, for in such a case the tendering of performance would be an idle and useless ceremony" (R.C.P.S. Assoc. v Karam Devs., 258 AD2d at 511). Here, the buyer did not set a closing date to tender performance and demand good title, and, indeed, objected to the sellers' attempts to set a closing date (see Xelo v Hamilton, 198 AD3d 710, 713; 130 Third St. Loft, LLC v HKF, Inc., 164 AD3d 724, 725; Contreras v Klein, 17 AD3d 395, 395; Zelmanovitch v Ramos, 299 AD2d 353, 354).
Further, contrary to the buyer's contention, the sellers were not in default under the contract for their alleged failure to clear the exceptions to title during the period of time unilaterally set by the buyer in its notice of default letter. The contract required the sellers to clear the exceptions to title by the closing date, and the sellers never repudiated their obligation to do so.
Accordingly, the buyer failed to establish that it was entitled to specific performance of the contract of sale or injunctive relief. As such, the Supreme Court should have dismissed the complaint.
Contrary to the sellers' contention, the sellers failed to establish on their counterclaim that the buyer breached the contract by failing to appear at a time-of-the-essence closing scheduled for June 17, 2016. By letter dated May 5, 2016, the sellers properly set a time-of-the-essence closing for June 3, 2016. However, by email dated May 24, 2016, the sellers' attorney extended the closing for "an additional 2 weeks to get things in order and try to resolve." The sellers' email was inadequate to make time of the essence because it did not clearly and unambiguously set a new date and time for closing, and it did not inform the buyer that it would be considered in default if it did not perform by a given date (see Krishna v Jasper Old Westbury 66 LLC, 175 AD3d 600, 602; Latora v Ferreira, 102 AD3d at 839). Thus, the buyer was not in default for not appearing at a closing (see Krishna v Jasper Old Westbury 66 LLC, 175 AD3d at 602). Accordingly, the Supreme Court properly dismissed the sellers' counterclaim.
BARROS, J.P., RIVERA, GENOVESI and VOUTSINAS, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court