| **Titan Capital ID, LLC v Mendel** |
|:---:|
| 2026 NY Slip Op 30943(U) |
| March 10, 2026 |
| Supreme Court, Kings County |
| Docket Number: Index No. 524272/2025 |
| Judge: Peter P. Sweeney |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS, PART 73
-------------------------------------------------------------------------X

TITAN CAPITAL ID, LLC,

                             Plaintiff,
          -against-

Decision and Order
Motion Sequence 1 and 2
Index No.: 524272/2025

HENDEL MENACHEM MENDEL A/K/A MENDEL MENACHEM
A///K/A MENACHEM HENDEL,

                         Defendant.
-------------------------------------------------------------------------X

The following e-filed papers read herein:          NYSCEF Doc. Nos.:

Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations) Annexed_____    _____
Opposing Affidavits (Affirmations)
Affidavits/ Affirmations in Reply  _____    _____
Other Papers:

On February 25, 2022, plaintiff and defendant signed an Agreement of Purchase and Sale for the sale of the subject premises for the sum of $3,600,000, with a closing date to occur on or before June 2, 2022. Defendant tendered a deposit in the amount of $360,000, but was unable to close at that time. In May 2022 the agreement was amended to provide for a closing date of August 2, 2022. Defendant had to pay another $360,000 as an additional deposit and the purchase price was increased to $3,625,000. Defendant could not close at that time either, and another amendment was signed in July 2022. A third, fourth and fifth amendment were entered into, calling for additional payments and an increase in price for the premises. A letter advising that time was of the essence and plaintiff was ready to close was sent February 20, 2025,

1

and another one sent May 23, 2025 calling for a closing June 30, 2025. Defendant failed to appear at the closing.

Plaintiff thereupon commenced this action for judgment declaring that defendant was in default of the contract of sale and subsequent amendments thereto, and declaring that all deposits and payments tendered were forfeited in accordance with the contract and amendments. In addition, plaintiff sought an injunction enjoining defendant from encumbering the premises, including filing a notice of pendency.

In his answer, defendant's counsel asserts that plaintiff negotiated the contract of sale and the amendments directly with defendant, not through counsel. Further, it is alleged defendant was not versed in buying real estate, was not fluent in English, and did not have funding to close, facts known to plaintiff. Plaintiff should not be heard now to retain over $2,000,000 in deposits and payments, causing defendant great injury. Defendant asserts he should be permitted to close under the terms of the original contact of sale and otherwise be refunded the full amount of the deposits and payments tendered.

In Motion Sequence 1, plaintiff moves for summary judgment awarding it summary judgment declaring defendant in default of the contract of sale and amendments thereto; declaring that the deposits and payments made by defendant, totaling $2,420,000, should be the rightful property of plaintiff as liquidated damages; and enjoining defendant from encumbering the subject property. Plaintiff contends that where, as here, there is an unambiguous contract to purchase real property and a defendant fails to close after a time of the essence letter, summary judgment could be granted to the seller, and the seller can keep the deposit paid as liquidated damages. Since defendant has failed to raise a question of fact, it is argued, plaintiff is entitled to summary judgment.

Defendant cross-moves (Motion Sequence 2) for summary judgment on his second counterclaim for specific performance under the terms of the original contract. Plaintiff, it is argued, was aware that defendant was not a sophisticated party, lacked experience or knowledge in real estate transactions

2

and was not even fluent in English. Plaintiff negotiated agreements directly with defendant, sent threatening communications, and extracted over half of the initial purchase price from defendant. This is not, it is contended, a traditional 10% downpayment but a case where plaintiff extracted over $2,000,000, more than 50% of the original purchase price. The enforceability of liquidated damages is not absolute and should not be applied here, where doing so would permit an extreme and unconscionable windfall to plaintiff.

Nevertheless, contends defendant, he is seeking summary judgment on his second counterclaim for specific performance under the terms of the original contract. That would be, defendant claims, the most straightforward and equitable outcome in this case. A payoff letter is submitted showing that defendant can get funding to close.

"Liquidated damages constitute the compensation which, the parties have agreed, should be paid in order to satisfy any loss of injury flowing from a breach of their contract" (*Truck Rent-A-Center, Inc. v Puritan Farms 2nd, Inc.,* 41 NY2d 420, 423-424, [1977]). "On the other hand, liquidated damage provisions will not be enforced if it is against public policy to do so and public policy is firmly set against the imposition of penalties or forfeitures for which there is no statutory authority" (*Truck Rent-A-Center v Puritan Farms, supra*). A liquidated damages provision has its basis in the principle of just compensation for loss, and liquidated damages that constitute a penalty violate public policy and are unenforceable (*see Trustees of Columbia Univ. in the City of NY v D'Agostino Supermarkets, Inc.,* 36 NY3d 69, 75, 2020).

In the instant case, defendant contends that plaintiff bypassed counsel to negotiate directly with non-English speaking defendant and seeks to retain over 67% of the original purchase price which is nearly seven times the standard 10% down payment typically upheld in real estate law in this State. Accordingly, there are questions of fact as to the whether the liquidated damages should constitute a forfeiture and an unenforceable penalty, and plaintiff's motion for summary judgment (MS 1) is denied.

3

Defendant's cross motion for summary judgment on its second counterclaim (MS 2) is also denied. Procedurally, defendant's supporting affirmation is missing the mandatory language of CPLR 2106. Substantively, "A party seeking specific performance of a contract for the sale of real property is required to establish not only that he or she was ready, willing, and able to close on the scheduled closing date, but also that the other party was in default" (*Latora v Ferreira*, 102 Ad2d 838, 839 [2d Dept. 2013]; *see Treasure Island of Asbury Park Self-Storage, LLC v MBAR Realty, LLC*, 216 AD3d 1200 [2d Dept. 2023]). Here, specific performance is not available for a party who defaulted on a time of the essence real estate contract.

Accordingly, it is

ORDERED that Motion Sequence 1 is denied because of issues of fact as to whether the liquidated damages herein constitute an unenforceable penalty, and it is

ORDERED that Motion Sequence 2 is denied since the moving party is not entitled to the equitable relief of specific performance.

The foregoing constitutes the decision and order of this Court.

Dated: March 10th, 2026

Peter P. Sweeney, J.S.C.

4

[* 4]