[36 NYS3d 458]

MORGAN STANLEY MORTGAGE LOAN TRUST 2006-13ARX, by U.S. Bank National Association, as Trustee, Appellant, v MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, as Successor in Interest to Morgan Stanley Mortgage Capital, Inc., Respondent.

First Department, August 11, 2016

### APPEARANCES OF COUNSEL

*MoloLamken LLP*, New York City (*Steven F. Molo, Justin M. Ellis, Tuongvy T. Le, Joel M. Melendez* and *Gajan Sivakumaran* of counsel), for appellant.

*Davis Polk & Wardwell LLP*, New York City (*Brian S. Weinstein, James P. Rouhandeh, Carissa M. Pilotti* and *Craig T. Cagney* of counsel), for respondent.

### OPINION OF THE COURT

GISCHE, J.

This case arises from the securitization and sale of residential mortgages. The mortgage loans originated with an affiliated entity of defendant, Morgan Stanley Mortgage Capital Holdings LLC (Morgan Stanley). Plaintiff, U.S. Bank National Association (Trustee), as trustee of the Morgan Stanley Mortgage Loan Trust 2006-13ARX holding the underlying loans (Trust), seeks redress for the massive loan defaults that occurred, rendering the residential mortgage backed securities (RMBS) it sold to outside investors virtually worthless. Insofar as relevant to this appeal, the Trustee, in addition to its other breach of contract claims, alleges that Morgan Stanley breached a contractual duty to notify the Trustee of the defective loans, giving rise to damages not governed by the sole remedies restrictions in the parties' agreements, and also that Morgan Stanley's gross negligence otherwise renders the sole remedies clauses unenforceable. We are called upon to decide whether the motion court correctly granted defendant's pre-answer motion dismissing these particular claims. We hold that, consistent with our recent decision in *Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit &*

*Capital, Inc.* (133 AD3d 96, 108 [1st Dept 2015], *lv granted* 2016 NY Slip Op 60115[U] [1st Dept, Jan. 5, 2016]), defendant's alleged breach of its contractual duty to notify the Trustee of defective loans gives rise to an independent, separate claim for breach of the parties' agreements, which should not have been dismissed. We also hold that, under the highly deferential standard afforded to pleadings, the particular facts alleged in the amended complaint are sufficient to support plaintiff's claim of gross negligence, which should not have been dismissed (*Sommer v Federal Signal Corp.*, 79 NY2d 540, 554 [1992]).

Morgan Stanley is the successor in interest to Morgan Stanley Mortgage Capital, Inc., which sold debt, in the form of 1,873 residential mortgage loans, to a Morgan Stanley affiliate, Morgan Stanley Capital I, Inc. The sale, which represented an unpaid principal balance of more than $600,000,000, was largely effectuated through two integrated agreements, a mortgage loan purchase agreement (MLPA) and a pooling and servicing agreement (PSA), both dated as of September 1, 2006. These residential mortgage loans were pooled together and sold to the Trust, which issued certificates representing ownership shares in the combined assets. These RMBS were then offered for sale, by prospectus, to investors. Mortgage payments were the anticipated source of revenues that the Trustee would use to pay investors. However, when hundreds of the borrowers defaulted in making their mortgage payments, the RMBS became virtually worthless (*see Nomura* at 99 [discussion on how RMBS are created]).

MLPA article III, section 3.01 sets forth 39 warranties and representations made by Morgan Stanley in connection with the sale of the loans to the Trust. These are incorporated by reference in the PSA. Most of the representations and warranties pertain to the characteristics, quality and overall risk profile of the loans. Among them are the following:

> "(a) The information set forth in the Mortgage Loan Schedule is complete, true and correct in all material respects as of the Cut-off Date [September 1, 2006].

> "(b) Seller is the sole owner and holder of the Mortgage Loans free and clear of any liens . . . and has full right and authority to sell and assign the same . . .

> "(d) The Mortgage Loan is not in default and all monthly payments due prior to the transaction have been paid . . .

"(m) There is no default, breach, violation, anticipated breach or event of acceleration existing under the Mortgage or the related Mortgage Note and no existing or known event which, with the passage of time, . . . would constitute a default, breach, violation or event of acceleration under such Mortgage or the related Mortgage Note . . .

"(w) Each Mortgaged Property is improved by a one- to four-family residential dwelling."

The MLPA states further that any representations and warranties are made to the "best of the Seller's knowledge" and provides for the following actions to take place in the event of a breach:

"(mm) . . . if it is discovered by the Depositor, the Seller, the Servicer or the Trustee . . . that the substance of such representation and warranty is inaccurate and such inaccuracy materially and adversely affects the value of the related Mortgage Loan or the interest therein of the Purchaser or the Purchaser's assignee, transferee or designee then, notwithstanding the Seller's lack of knowledge with respect to the substance of such representation and warranty being inaccurate at the time the representation or warranty was made, such inaccuracy shall be deemed a breach of the applicable representation or warranty."

If any party later discovered that any loans breached a representation or materially and adversely affected the value of any loan, the purchaser's interest, etc., then within 90 days of such discovery, the party discovering the defect had to notify the other parties and the seller was obligated to cure the defect by providing any missing documentation, replacing the defective mortgage with an "eligible" one, or repurchasing the affected loan at the "purchase price," defined as follows:

"the sum of (i) 100% of the unpaid principal balance of the Mortgage Loan on the date of such purchase and (ii) accrued interest thereon . . . from the date through which interest was last paid by the Mortgagor to the Due Date in the month in which the Purchase Price is to be distributed to Certificateholders . . . and (iii) costs and damages incurred by the Trust Fund in connection with a repurchase . . . that arises out of a violation of any predatory or abusive lending law."

The MLPA provides further that

> "[i]t is understood and agreed that the obligations of the Seller set forth in this Section 3.01 to cure, repurchase or substitute for a defective Mortgage Loan *constitutes the sole remedy of the Purchaser* respecting a missing or defective document or a breach of the representations or warranties contained in this Section 3.01" (emphasis supplied).

The complaint alleges that the Trust has suffered more than $140 million in damages attributable to the falsity of the representations and warranties made by Morgan Stanley with reckless indifference, because it did not adhere to the barest minimum of underwriting standards. The Trustee claims that when it notified Morgan Stanley of the defective loans, demanding that Morgan Stanley repurchase them, Morgan Stanley refused to do so. The Trustee claims that upon conducting a forensic examination of the RMBS, it discovered that there were hundreds of loans that were of lesser quality than what Morgan Stanley had represented. The complaint alleges many of the underlying borrowers obtained their loans by providing basic and critical information on their applications that was inaccurate, if not outright false, and that Morgan Stanley failed to verify such information and statements. For instance, the borrowers misrepresented their incomes, inaccurately reported their employment statuses and/or employment histories, and/or misrepresented their actual debt obligations. Some borrowers failed to disclose ownership of other mortgage encumbered properties, or that they did not occupy the underlying properties securing the mortgages. Many loans had incorrect and/or unsatisfactory debt-to-income ratios. The complaint alleges that Morgan Stanley should have notified the Trustee of these breaches because it knew of them, or could have discovered them with due diligence, given its superior access to documents and information about these loans. The Trustee contends that Morgan Stanley made representations to make the loans appear less risky than they were. Despite the sole remedy provision, the complaint alleges that contractual damages will not adequately compensate the Trust for its losses.

Morgan Stanley moved to dismiss the complaint. The motion court dismissed the fifth cause of action alleging a breach of contract based on Morgan Stanley's failure to notify plaintiff

about the defective loans. The motion court rejected the Trustee's argument that Morgan Stanley's inaction constituted an independent breach of contract claim, finding that the requirement was not a contractual obligation, but merely a notification remedy. The motion court also dismissed the claims that Morgan Stanley's conduct constituted gross negligence on the basis that "the relief available to plaintiff is limited by the sole remedy provisions in the [PSA] and the [MLPA]" (2014 NY Slip Op 32520[U], *1-2 [2014]). Alternatively, the motion court held that even if, legally, the sole remedy limitations in the MLPA and PSA could be rendered unenforceable by Morgan Stanley's willful misconduct or gross negligence, the complaint did not contain facts to sufficiently support that claim.

█ In dismissing plaintiff's failure to notify cause of action, the motion court observed that the issues raised by the Trustee were substantially the same as those raised in another RMBS case before it, *Nomura Asset Acceptance Corp. Alternative Loan Trust v Nomura Credit & Capital, Inc.* (2014 NY Slip Op 31671[U] [Sup Ct, NY County, June 26, 2014, Friedman, J.]) and that its ruling was consistent with that earlier case. After the parties briefed this appeal, this Court modified the motion court's decision in *Nomura*, holding that under similar RMBS agreements, a seller's failure to provide the trustee with notice of material breaches it discovers in the underlying loans states an independently breached contractual obligation, allowing a plaintiff to pursue separate damages (*Nomura*, 133 AD3d at 108). Consistent with our decision in *Nomura*, we now modify the motion court's order dismissing the failure to notify claim made in this case and reinstate it.

In connection with plaintiff's claims of gross negligence, our starting point is, as always when considering a pre-answer motion to dismiss, a presumption that the allegations in the pleading are true and are entitled to the benefit of all favorable inferences that may be made therefrom (*Leon v Martinez*, 84 NY2d 83, 87 [1994]). The court's role is to determine only whether the facts as alleged fit into any cognizable legal theory and not whether the plaintiff will ultimately be successful on the claim (*Nomura*, 133 AD3d at 105).

As a general principle of law, damages arising from a breach of contract will ordinarily be limited to those necessary to redress the wrong (*see e.g. Rocanova v Equitable Life Assur. Socy. of U.S.*, 83 NY2d 603, 613 [1994]). Where parties contractually agree to a limitation on liability, that provision is

enforceable, even against claims of a party's own ordinary negligence (*Sommer v Federal Signal Corp.*, 79 NY2d at 553, 554). The purpose of provisions that limit liability or remedies available in the event of breach is to "allocat[e] the risk of economic loss in the event that the contemplated transaction is not fully executed" (*Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 84 NY2d 430, 436 [1994]). Courts will generally honor the remedies that the parties have contractually agreed to (*id.*).

There are exceptions to this rule of law, however, and as a matter of long-standing public policy, a party may not insulate itself from damages caused by its "grossly negligent conduct" (*Sommer* at 554). Used in this context, "gross negligence" differs in kind, and not only degree, from claims of ordinary negligence. "It is conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing" (*Colnaghi, U.S.A. v Jewelers Protection Servs.*, 81 NY2d 821, 823-824 [1993], citing *Sommer*, 79 NY2d at 554).

In support of its claim for gross negligence, the complaint alleges that Morgan Stanley acted with reckless indifference. It alleges there were widespread breaches across the loans being held by the Trust and that Morgan Stanley failed to adhere to even minimal underwriting standards or to verify basic and critical information about potential buyers; it further alleges that Morgan Stanley had access to the underlying loan files and that more than half of the loans later reviewed by plaintiff's forensic analysts revealed rampant breaches of the warranties Morgan Stanley made. It further alleges that Morgan Stanley simply ignored its contractual obligations, disregarded the known or obvious risks that the loans sold to the Trustee were defective and then failed to notify the Trustee of any breaches or effectuate a cure/repurchase. We hold that these allegations are sufficient to withstand dismissal at the pleading stage.

In other contexts, we have recognized that allegations of serious and pervasive misrepresentations regarding the level of risk in an investment with widespread, massive failures will support a claim for contractual gross negligence (*Ambac Assur. UK Ltd. v J.P. Morgan Inv. Mgt., Inc.*, 88 AD3d 1 [1st Dept 2011]). In yet other contexts, we have recognized that this type of alleged conduct in substantially similar investments would even support a claim of fraud (*Basis Yield Alpha Fund Master v Morgan Stanley*, 136 AD3d 136, 143, 144 [1st Dept 2015];

*MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, 87 AD3d 287 [1st Dept 2011]). Consistent with these decisions, the allegations in this case are sufficient to support a claim of gross negligence. We recognize that some trial courts have taken different approaches when faced with issues involving the scope of the sole remedies clauses in residential mortgage put-back actions (*see e.g. Saco I Trust 2006-5 v EMC Mtge. LLC*, 2014 NY Slip Op 31432[U] [Sup Ct, NY County 2014]; *but see Deutsche Alt-A Sec. Mtge. Loan Trust, Series 2006-OA1 v DB Structured Prods., Inc*, 958 F Supp 2d 488, 501 [SD NY 2013]). However, given that this case is only at a pleading stage, and consistent with our own precedent, we believe that the allegations of gross negligence should not be dismissed.

 Morgan Stanley argues that because the contractual limitations at bar do not completely insulate it from liability, the gross negligence exception to enforcement does not apply. In *Sommer*, the Court of Appeals recognized that the public policy that prohibits a party from insulating itself from damages caused by grossly negligent conduct applies equally to a clause that completely exonerates a party from liability as well as to a clause limiting damages to something nominal (*Sommer* at 554). The same rationale applies to sole remedies that are illusory. Morgan Stanley argues that the sole remedy clauses at issue would make the investors whole "by requiring that any such loans be repurchased." That conclusion regarding the actual effect of the sole remedy clauses remains to be tested. In *Nomura*, we recognized that the remedy of specific performance in put-back cases might be impossible to fulfill (*Nomura* at 106). It is for this reason we left open the possibility that, even for ordinary breach of contract claims, equity may require an award of monetary damages in lieu of specific performance. *Nomura* is now pending before the Court of Appeals. The issue of whether the sole remedies clauses in these contracts will make the investors whole cannot be ascertained at this stage of the litigation, militating in favor of permitting the allegations of gross negligence to remain.

Accordingly, the order of the Supreme Court, New York County (Marcy Friedman, J.), entered September 30, 2014, which, to the extent appealed from as limited by the briefs, granted defendant's motion to dismiss the first and second causes of action to the extent they seek damages inconsistent with the terms of the repurchase protocols and the fifth cause of action, should be reversed, on the law, without costs, and the motion denied.

MAZZARELLI, J.P., MOSKOWITZ and RICHTER, JJ., concur.

Order, Supreme Court, New York County, entered September 30, 2014, unanimously reversed, on the law, without costs, and the motion denied.