Matter of Part 60 Put-Back Litig. (2019 NY Slip Op 00368)





Matter of Part 60 Put-Back Litig.


2019 NY Slip Op 00368


Decided on January 17, 2019


Appellate Division, First Department


Kahn, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 17, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith J. Gische,J.P.
Angela M. Mazzarelli
Marcy L. Kahn
Ellen Gesmer, JJ.


652877/14 2118 

[*1]In re Part 60 Put-Back Litigation
Deutsche Bank National Trust Company, etc., Plaintiff-Appellant,
v
Morgan Stanley Mortgage Capital Holdings LLC, etc., et al., Defendants-Respondents.



Plaintiff appeals from the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered December 11, 2015, which, insofar as appealed from as limited by the briefs, granted defendants' motion to dismiss the cause of action for breach of representations and warranties to the extent it seeks compensatory damages inconsistent with the sole remedy clauses of the parties' agreements, punitive damages, and attorneys' fees.




MoloLamken LLP, New York (Robert K. Kry, Steven F. Molo and Lauren M. Weinstein of counsel), for appellant.
Davis Polk & Wardwell LLP, New York (Brian S. Weinstein, James P. Rouhandeh, Elisabeth Grippando, Alan J. Tabak and Matthew Cormack of counsel), for respondents.



KAHN, J.


On this appeal, which arises from the securitization and
sale of residential mortgages, plaintiff, Deutsche Bank National Trust Company (Trustee), as trustee of the Morgan Stanley ABS Capital I Inc. Trust 2007-NC4 (Trust), challenges the motion court's pre-answer dismissal of the Trustee's cause of action for breach of contract to the extent that it included a demand for compensatory damages. The motion court dismissed the Trustee's compensatory damages demand on the ground that the "sole remedies" clauses in the underlying securitization agreements precluded the Trustee from seeking such relief. The Trustee maintains, however, that it sufficiently pleaded gross negligence on the part of defendants Morgan Stanley Mortgage Capital Holdings LLC (MSMCH) and Morgan Stanley ABS Capital I Inc. (MSAC) to render the "sole remedies" clauses unenforceable. On that issue, we hold, consistent with our decision in Morgan Stanley Mortgage Mtge. Loan Trust 2006-13ARX v Morgan Stanley Mtge. Capital Holdings LLC (143 AD3d 1 [1st Dept 2016]), that the complaint's allegations of gross negligence in this case are sufficient to render the "sole remedies" clauses unenforceable. We are also called upon to decide whether the motion court properly dismissed the Trustee's demands for punitive damages and attorneys' fees. As to those issues, for the reasons that follow, we hold that those demands should not have been dismissed.
Specifically, this action arises from the securitization of subprime mortgages by Morgan Stanley & Co., Inc. in 2007, shortly before the housing market collapsed. The Trustee, as trustee of the Trust, seeks damages for the numerous loan defaults that occurred, rendering the residential mortgage backed securities (RMBS) it sold to outside investors virtually worthless.
In April 2007, defendant MSMCH acquired 5,337 mortgage loans with an aggregate principal of over $1.05 billion at a bankruptcy auction. MSMCH, as the sponsor of the securitization, conveyed the loans to defendant MSAC. MSAC then entered into a pooling and servicing agreement (PSA) to create the Trust and to convey the loans to the Trust. The Trust then issued certificates representing a security interest in the loans. Nonparty Morgan Stanley & Co., Inc., the underwriter, purchased the certificates and sold them to the investing public in exchange for substantial fees. The certificateholders were then entitled to the cash flow from the principal and interest payments on the mortgage loans.
In connection with MSMCH's conveyance of the loans to MSAC,
those parties entered into a representations and warranties
agreement (RWA), under which MSMCH made representations about
the quality of the mortgage loans. MSMCH represented that
neither it nor, to its knowledge, any party involved in the
origination of the loans had committed any "fraud, error, omission, misrepresentation, negligence or similar occurrence"
with respect to the loans. MSMCH further represented that no
mortgage loan payments had been more than 30 days delinquent
since the origination of the loans, and made representations as
to the borrowers' ability to repay and the value of the mortgaged
properties.
Section 4(a) of the RWA provides, in pertinent part, that in
the event that
"a breach . . . involv[ing] any representation or
warranty . . . cannot be cured within sixty (60)
days of the earlier of either discovery by or
notice to the Sponsor [MSMCH] of such breach,
all of the Mortgage Loans materially and adversely
affected thereby shall, at [the Depositor MSAC's]
option, be repurchased by the [MSMCH] at the Repurchase
Price."
The RWA also contains a "sole remedy" clause, which provides, in pertinent part:
"It is understood and agreed that the obligation of
[MSMCH] set forth in Section 4(a) to repurchase for
a Mortgage Loan in breach of a representation or
warranty . . . constitutes the sole remedy of the
Depositor [MSAC] and any other person or entity with
respect to such breach (RWA § 4[c])."
Pursuant to the PSA, MSAC assigned to the Trustee its right to enforce the representations and warranties made by MSMCH under the RWA. The PSA also included MSAC's representations to the Trustee that immediately before the transfer of the loans to the Trust, MSAC had "good title to . . . [the] Mortgage Loan[s], free of any interest of any other Person" (PSA § 2.06[h]). The PSA further provided that if any party discovered a material breach of a representation or warranty made by MSMCH or MSAC, such party "shall give prompt written notice thereof" to the other parties and to MSMCH (PSA § 2.07).
The PSA further provides, in pertinent part:
"Within 60 days of the earlier of either discovery by
or notice to [MSAC] of any breach of a representation
or warranty . . . that materially and adversely affects
the value of any Mortgage Loan or the interest of the Trustee, the Certificate Insurer or the
Certificateholders therein, [MSAC] shall use its best efforts to promptly cure such breach in all material respects and, if such defect or breach cannot
be remedied, [MSAC] shall purchase such Mortgage Loan
at the Repurchase Price or, if permitted hereunder, substitute a Substitute Mortgage Loan for such Mortgage Loan" (PSA) § 2.03[g]).
Additionally, the PSA contains a "sole remedies" clause, which provides:
"It is understood and agreed by the parties hereto that the obligation of [MSAC] under this Agreement or of the Sponsor [MSMCH] under the Representations and Warranties Agreement to cure, repurchase or substitute any Mortgage Loan as to which a breach of a representation and warranty has occurred and is continuing, shall constitute the sole remedies against such Persons respecting such breach available to Certificateholders, [MSAC] (if applicable), or the Securities Administrator, Certificate Insurer or the Trustee on their behalf" (PSA) § 2.03[q]).
The complaint alleges that the Trust has suffered damages exceeding $495 million as the result of pervasive and widespread breaches of representations and warranties made by MSMCH in the RWA as to the quality of the loans made in the offering documents filed with the United States Securities and Exchange Commission (SEC) and by MSAC in the PSA to provide good title, free of defects, to the mortgage loans. According to the complaint, these "assurances were [*2]especially important" to the securitization because the originator of the loans "was bankrupt and could not guarantee the Loans." The complaint further alleges that an independent analysis conducted by third-party consultants retained by the Federal Guaranty Insurance Company (FGIC), the certificate insurer, revealed breaches of representations and warranties in 100% of a sampling of 800 of the mortgage loans in question. According to the complaint, defendants were later provided with notice "that defective loans permeated the Trust - specifically, that no less than 1000 Mortgage Loans are in breach of MSMCH's representations and warranties." The Trustee claims that, notwithstanding having received such notice, MSMCH and MSAC failed substantially in their obligation to repurchase the loans within 60 days of discovery or notice to MSAC of any breach.
The complaint further alleges that on July 24, 2014, the SEC issued a cease and desist order against MSMCH, MSAC, and Morgan Stanley & Co. LLC (collectively, Morgan Stanley) based on findings that Morgan Stanley had made "misleading public disclosures regarding the number of delinquent loans" in the subject Trust and another similar trust created by Morgan Stanley. According to the Trustee, the SEC order stated that by filing offering documents that materially understated current delinquencies, Morgan Stanley committed "fraud or deceit upon a purchaser of securities," in violation of Section 17(a)(3) of the Securities Act of 1933.
Based on the foregoing facts and allegations, the Trustee asserted in its complaint, insofar as is pertinent to this appeal, a cause of action against Morgan Stanley for breach of the representations and warranties concerning the quality of the loans in the RWA and conveyance of good title in the PSA and sought compensatory damages, punitive damages, and attorneys' fees and costs. As grounds for overcoming the sole remedy clauses, the complaint alleged that Morgan Stanley acted with "gross negligence" when it committed "widespread" breaches of the representations and warranties, and ignored its duties to notify and repurchase, despite discovering the breaches. As grounds for punitive damages, the complaint relied on the SEC order alleging that Morgan Stanley defrauded the public by misrepresenting delinquency rates in the offering documents.
Morgan Stanley moved to dismiss the claim of breach of representations and warranties as to the quality of the loans to the extent it seeks compensatory damages inconsistent with the sole remedy clauses, punitive damages and attorneys' fees.
Supreme Court dismissed the demands for compensatory damages, punitive damages, and attorneys' fees. As to the demand for compensatory damages, it concluded that the sole remedy clauses were enforceable. In dismissing the demand for punitive damages, the court concluded that "an independent claim of fraud [was] not pleaded; nor [did] the complaint plead a wrong aimed at the public, generally." The court also dismissed the demand for attorneys' fees, citing a prior decision in which it dismissed an attorneys' fee claim that was based on substantially similar contract language as that here authorizing the trustee's recovery of expenses for enforcement of remedies, but noted that this Court had not addressed the issue on appeal (see Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc. (2014 NY Slip Op 32604[U] [Sup Ct NY County, July 18, 2014], mod 133 AD3d 96 [1st Dept 2015], affd as mod 30 NY3d 572 [2017]).
Our analysis begins with the recognition that "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms" (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]). In accordance with this general principle, contractual provisions that limit or negate the liability of a party to a contract are enforceable because they represent the parties' agreement to limit damages and thereby keep a party's commercial services affordable (see Sommer v Federal Signal Corp., 79 NY2d 540, 554 [1992]).
This general principle of enforceability of contractual provisions limiting liability is, nonetheless, inapplicable if there exists a statute or public policy to the contrary" (Sommer, 79 NY2d at 553). "It is the public policy of this State . . . that a party may not insulate itself from damages caused by grossly negligent conduct" (id. at 554, citing, inter alia, Kalisch-Jarcho, Inc. [*3]v City of New York, 58 NY2d 377, 384-385 [1983]. Such conduct, which must "smack[ ] of intentional wrongdoing" and/or evince "a reckless indifference to the rights of others," cannot be contractually immunized from liability as a matter of public policy (Abacus Fed. Sav. Bank v ADT Sec. Servs., Inc., 18 NY3d 675, 683 [2012], quoting Kalisch—Jarcho, 58 NY2d at 385). "This applies equally to contract clauses purporting to exonerate a party from liability and clauses limiting damages to a nominal sum" (Sommer, 79 NY2d at 554).
In the past several years, the appellate courts of this state have considered the issue of enforceability of contractual liability limitation provisions in the form of "sole remedy" clauses in RMBS agreements, both under circumstances where the complaint sets forth no allegation of gross negligence and under circumstances where such an allegation is made. Nomura Home Equity Loan, Inc. (30 NY3d 572 [2017], supra) is an example of the former. In Nomura, decided after Supreme Court's decision here, the Court of Appeals held that the claims for general contract damages based upon allegations of "widespread, pervasive and material misrepresentations and omissions" with respect to the residential mortgage loan transactions in question in that case could not survive a motion to dismiss (id. at 580). The mortgage loan purchase agreements entered into by the parties in Nomura provided that "to cure or repurchase a defective Mortgage Loan . . . constitute the sole remedies of the Purchaser against [defendant] respecting . . . a breach of the representations and warranties contained in" the agreements (id. at 579-580 [emphasis removed]). The Court of Appeals in Nomura concluded that these sole remedies clauses were "sufficiently clear to establish that no other remedy was contemplated" (id. at 582, citing J. D'Addario & Co., Inc. v Embassy Indus., Inc., 20 NY3d 113, 118 [2012]), especially given the sophistication level of the contracting parties (id., quoting Kalisch-Jarcho, 58 NY2d at 384). Thus, Nomura and its progeny apply the general rule that a sole remedy provision cannot be "nullif[ied by allegations of] multiple, systemic breaches" (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 31 NY3d 569, 582 [2018], quoting Nomura, 30 NY3d at 585-586).
By contrast, in Morgan Stanley Mtge. Loan Trust 2006-13ARX (143 AD3d 1 [1st Dept 2016], supra) (ARX), the plaintiff trustee claimed that the issuer of the securities had engaged in gross negligence, where hundreds of the 1,873 residential mortgage loans in the trust later went into default (id. at 4), and the defendant knew at the time of sale that the borrowers had provided inaccurate income and other critical information on their loan applications (id. at 6). The mortgage loan purchase agreement contained a sole remedy clause substantially similar to that in the PSA in this case [FN1]. This Court held that the particular facts alleged in the complaint were "sufficient to support [a] claim of gross negligence" (id. at 4).
Here, the Trustee alleges that the FGIC sampling of 800 of the mortgage loans in question manifested breaches of representations and warranties in 100% of those loans, revealing breaches that were more pervasive and egregious than those alleged in either ARX or Nomura. Moreover, the complaint alleges violations on various grounds, including departures from defendants' own underwriting guidelines as to disclosure of the borrowers' income, debt obligations, employment status, use and occupancy of the property securing their loans, and appraisal value of the property, which were either known or should have been known to defendants by the time the [*4]securitization deal closed. Under the standard applicable on a pre-answer motion to dismiss, the allegations of the pleading are presumed true and are entitled to all favorable inferences that may be drawn from them (Leon v Martinez, 84 NY2d 83, 87 [1994]). Accordingly, the complaint's allegations of pervasive, knowing breaches of the representations and warranties on multiple grounds as to the quality of loans throughout the pool sufficiently plead gross negligence to render the sole remedy clause of the parties' agreements unenforceable (ARX, 143 AD3d at 9).
Furthermore, at this stage of the case, the actual effect of the sole remedy clause in making the investors whole cannot be ascertained. The fact that monetary damages may be required in lieu of specific performance is further reason to permit the allegations of gross negligence to remain (id.).
With respect to plaintiff's demand for punitive damages, such a demand is properly made in a breach of contract action if all of the following elements are sufficiently pleaded: "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature . . .; (3) the egregious conduct [was] directed to plaintiff; and (4) it must be part of a pleaded pattern directed at the public generally" (New York Univ. v Continental Ins. Co., 87 NY2d 308, 316 [1995]).
Here, the complaint reflects findings of the SEC sufficient to allege a fraud claim against defendants: that defendants committed "fraud and deceit" on the certificateholders, as the facts support a rational inference that defendants knowingly misrepresented in the offering documents the delinquency rates of the loans held in the Trust; that they did so in order to induce the investing public, and did induce the certificateholders, to buy the certificates that defendants knew did not meet their representations of quality and were therefore likely to cause significant losses to investors; and that the certificateholders purchased the securities in justifiable reliance on the misrepresentations, causing the Trust, and consequently the certificateholders, to suffer $495 million in losses (see IKB Intl. S.A. v Morgan Stanley, 142 AD3d 447 [1st Dept 2016] [holding that purchasers of 25 mortgage backed securities in 18 similar mortgage securitizations sufficiently stated a fraud claim based on allegations of misrepresentations in the offering documents that the loans were of good quality]). The complaint thus sufficiently alleges that defendants' conduct was "egregious" and "part of a pattern directed at the public generally" to satisfy the first, second and fourth elements of a demand for punitive damages, respectively.
With respect to the third element, namely, that the egregious conduct was directed to the plaintiff, the complaint alleges that defendants' misrepresentations of borrower income, debt obligations and appraisal value, as well as their failure to convey good title, all materially and adversely affected the Trustee's, as well as the certificateholders', interests in the mortgage loans in question. Thus, plaintiff has sufficiently alleged, as is also required, that defendants' egregious conduct was "directed to" it, or that it was aggrieved by the conduct (see New York Univ. v Continental Ins. Co., 87 NY2d at 316; Rocanova v Equitable Life Assur. Socy. of U.S., 83 NY2d 603, 613-614 [1994]). Therefore, plaintiff's allegations of wrongdoing committed against it are sufficient to support a demand for punitive damages at this pleading stage.
Defendants concede that plaintiff is entitled to attorneys' fees under U.S. Bank N.A. v DLJ Mtge. Capital, Inc. (140 AD3d 518 [1st Dept 2016]).
Accordingly, the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered December 11, 2015, which, insofar as appealed from as limited by the briefs, granted defendants' motion to dismiss the cause of action for breach of representations and warranties to the extent it seeks compensatory damages inconsistent with the sole remedy clauses of the parties' agreements, punitive damages, and attorneys' fees,
should be reversed, on the law, without costs, and the motion denied.
All concur.
Order, Supreme Court, New York County (Marcy S. Friedman, J.), entered December 11, 2015, reversed, on the law, without costs, and the motion denied.
Opinion by Kahn, J. All concur.
Gische, J.P., Mazzarelli, Kahn, Gesmer, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 17, 2019
CLERK



Footnotes

Footnote 1: The language in ARX provided that "cure, repurchase or substitut[ion] for a defective Mortgage Loan constitutes the sole remedy of the Purchaser respecting . . . a breach of the representations or warranties" (ARX, 143 AD3d at 6 [internal quotation marks omitted]). Similarly, the language in the PSA in this case provided that "cure, repurchase or substitut[ion of] any Mortgage Loan as to which a breach of a representation and warranty has occurred and is continuing, shall constitute the sole remedies" (PSA § 2.03(q)]).