Matter of Part 60 RMBS Put - Back Litig. (2021 NY Slip Op 02252)





Matter of Part 60 RMBS Put - Back Litig.


2021 NY Slip Op 02252


Decided on April 13, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 13, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels
Judith Gische, Lizbeth González, Martin Shulman


Index No. 777000/15 153945/13 595610/15 Appeal No. 13084 Case No. 2019-5932 

[*1]Matter of Part 60 RMBS Put - Back Litigation Natixis Real Estate Capital Trust 2007-HE2, by Computer Share Trust Company, National Association, as Separate Securities Administrator, Plaintiff-Respondent, Natixis Real Estate Capital, Inc., Defendant-Appellant. Natixis Real Estate Holdings, LLC, etc., Third-Party Plaintiff-Appellant- Respondent, Wells Fargo Bank, N.A., Third-Party Defendant-Respondent- Appellant.



Defendant Third Party Plaintiff appeals, and Third-Party Defendant cross-appeals, from the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered on or about July 10, 2019, which, insofar as appealed from as limited by the briefs, granted plaintiff's motion to dismiss the third affirmative defense in the amended answer, granted counterclaim and third-party defendant Wells Fargo Bank, N.A.'s motion to dismiss the third counterclaim and the third cause of action in the amended third-party complaint (ATPC), and denied Wells Fargo's motion to dismiss the first and second counterclaims and the first and second causes of action in the ATPC.




Davis & Gilbert LLP, New York (H. Seiji Newman, Joseph Cioffi, and Massimo Giugliano of counsel), for appellant-respondent.
Jones Day, New York (Howard F. Sidman, Traci L. Lovitt and Joseph J. Boylan of counsel), and Jones Day, Pittsburgh, PA (Andrew R. Stanton of the bar of the Commonwealth of Pennsylvania, admitted pro hac vice, of counsel), for respondent-appellant.
Quinn Emanuel Urquhart & Sullivan, LLP, New York (Kathleen M. Sullivan, Michael B. Carlinsky, William B. Adams, Andrew Kutscher and Anna Deknatel), for respondent.



GISCHE, J. 


The parties' disputes in this action concern the contractual obligations arising from their respective roles in pooling and securitizing residential mortgages for sale as investment vehicles (residential mortgage backed securities or RMBS). Plaintiff, Computershare Trust Company, National Association (Computershare) pursues this action in its capacity as a Separate Securities Administrator. Defendant, Natixis Real Estate Holdings LLC is the successor in interest to Natixis Real Estate Capital, Inc. (collectively Natixis). Natixis acquired multiple mortgages from loan originators, which mortgages were subject to representations and warranties (R&Ws) and a right to demand repurchase if those R&Ws were breached. Natixis, in the capacity of "unaffiliated seller," then bundled and resold those mortgages which, pursuant to a Pooling and Servicing Agreement (PSA), were deposited into a trust. The trust has the right to enforce the R&Ws against the originators. Natixis also agreed to repurchase any loan that breached the R&Ws if the particular originator failed to do so (the backstop obligation). Pursuant to the PSA, third-party defendant Wells Fargo Bank N.A. (Wells Fargo) is the Securities Administrator and Master Servicer of the Trust. Nonparty Deutsche Bank National Trust Company (DBNTC) is the trustee.
Computershare claims that Natixis breached the PSA by failing to notify the other parties it had discovered that the mortgages breached the R&Ws and then failed to repurchase the non-conforming mortgages both under its direct obligation, and its backstop obligation under the PSA. In September 2018, Natixis served an amended answer with counterclaims (sometimes amended answer) and a separate amended third-party complaint (ATPC). The amended answer amplified [*2]its third affirmative defense to expressly state that the action was time-barred under CPLR 202 (the borrowing statute). The counterclaims in the amended answer are identical to the causes of action asserted in the ATPC.[FN1] The counterclaims/third-party causes of action generally assert three claims. The first is that Wells Fargo breached its obligation, as Securities Administrator under the PSA, to provide Natixis with prompt written notice of its discovery of material breaches of the R&Ws (Count I). The second claim is that Wells Fargo, as Master Servicer under the PSA, failed to oversee the Servicer's duty to provide notice of the R&Ws breaches and to maximize recovery on the defaulted mortgages (Count II). The third claim is that under the PSA, Wells Fargo had a contractual obligation to indemnify Natixis (Count III).
Computershare moved to dismiss the third affirmative defense that the claims against Natixis are time-barred. By separate motion, Wells Fargo moved to dismiss the ATPC and corresponding counterclaims in the amended answer pursuant to CPLR 3211(a)(1), (5) and (7). In a consolidated decision, the motion court granted Computershare's motion to dismiss the third affirmative defense in the amended answer, granted Wells Fargo's motion to dismiss the counterclaim and ATPC claim for contractual indemnification, and otherwise denied the motion to dismiss the additional counterclaims and causes of action in the ATPC. This appeal and cross appeal ensued.
Statute of Limitations The gravamen of the statute of limitations dispute is whether Natixis can now argue, five years after this case was commenced, and following prior litigation on the statute of limitations, that the borrowing statute presents a time bar to this action. The motion court held that the statute of limitations defense was barred by the doctrine of law of the case (LOTC). It did not reach the separate issue raised regarding whether the claim was waived.
The facts relevant to this issue are as follows:
This action was commenced in April 2013 and a complaint was filed in October 2013. In November 2013, Natixis brought a pre-answer motion to dismiss the complaint, claiming that the statute of limitation had expired. Natixis, relying only on CPLR 213(2), argued that the action was untimely because it had been commenced more than six years after the statute of limitations had accrued. The motion court held that the action was timely commenced within six years, because the accrual date for the statute of limitations was when the PSA was executed (April 30, 2007), and not the "as of" date recited in the instruments. Natixis appealed.
While the appeal was pending, in August 2015, Natixis interposed an answer with counterclaims to the complaint (original answer). The third affirmative defense asserted that Computershare's claims are time-barred pursuant to CPLR 213. The affirmative defense did not expressly reference the borrowing statute, nor did it provide for any basis [*3]other than CPLR 213 as the legal authority for its claims. Computershare then made a motion to dismiss the original answer.
This Court decided the pending appeal on Natixis' motion to dismiss on March 9, 2017 (149 AD3d 127 [1st Dept 2017]). We affirmed the motion court's determination that plaintiff's claims for breach of R&Ws were timely because they accrued at the time the contract was executed and were commenced within six years thereafter.
In September 2018, before Computershare's motion to dismiss the original answer was decided by the motion court, Natixis served the amended answer with counterclaims. It did so without first seeking leave of court. The third affirmative defense in the amended answer stated that the claims were time-barred "by all applicable statutes of limitations, including without limitation, CPLR 213 and/or any other statutes of limitations made applicable by the borrowing statute in CPLR 202 of any other statute." This is the first time Natixis referenced the borrowing statute in any motion or pleading it interposed.
Pursuant to CPLR 213(2) the statute of limitations for a breach of contract action in New York State is six years. Under the borrowing statute, however, when a non-resident sues on a cause of action accruing outside of New York, the claim must be timely under the limitations period of both New York and the jurisdiction where the action accrued (CPLR 202; 2138747 Ontario Inc. v Samsung C&T Corp., 144 AD3d 122 [1st Dept 2016], affd 31 NY3d 372 [2018]). Consequently, where the borrowing statute applies, it is the shorter of the two states' statutes of limitations that controls the timeliness of the action. The borrowing statute has remained substantially unchanged since 1902 and reflects a legislative policy to discourage forum shopping (Global Fin. Corp. v Triarc Corp., 93 NY2d 525, 528 [1999]). Natixis' time bar arguments in both its motion to dismiss and its original answer were limited to the six-year statute of limitations for contracts contained in CPLR 213(2). The amended answer now makes specific reference to CPLR 202, implying that a shorter, out of state, statute of limitations would bar this action. Natixis, primarily relying on the Court of Appeals decision in Deutsche Bank National Trust Co. v Barclays Bank PLC (34 NY3d 327 [2019]), argues that because the trustee, DBNTC, resides in California, where the applicable statute of limitations is four years, the borrowing statute would completely bar this action. Unlike Deutsche Bank, DBNTC is not the plaintiff here, and Natixis admits that there are open factual issues about how the borrowing statute would apply to this action. The record developed on this motion is wholly insufficient for the Court to assess whether arguments based upon the borrowing statute substantively have merit.
For the reasons set forth below, however, we hold that the doctrine of LOTC does not bar Natixis from now relying on the borrowing statute as a defense to this action[*4]. The doctrine of LOTC is a rule of practice premised upon sound policy that once an issue is judicially determined, further litigation of that issue should be precluded in a particular case (Martin v City of Cohoes, 37 NY2d 162, 165 [1975]). It ends the matter as far as judges and courts of coordinate jurisdiction are concerned (id.). While it shares some characteristics of a larger family of kindred concepts, including res judicata and collateral estoppel, it is not identical (People v Evans, 94 NY2d 499 [2000]). All these concepts contemplate that the party opposing preclusion had a full and fair opportunity to litigate the underlying determination. LOTC, however, differs in that it only addresses the potentially preclusive effect of judicial determinations made during a single litigation and before a final judgment is rendered (id. at 502). In addition, while res judicata and collateral estoppel are "rigid rules of limitation," LOTC has been described as "amorphous" and involving "an element of discretion" (id. at 503). Discretion, however, is circumscribed where the decision providing the basis for LOTC is by an appellate court. Thus, while LOTC cannot bind an appellate court to a trial court ruling (see Hutchings v Yuter, 108 AD3d 416 [2013]), it does bind a trial court (and subsequent appellate courts of coordinate jurisdiction) to follow the mandate of an appellate court, absent new evidence or a change in the law (Evans at 503; Carmona v Mathisson, 92 AD3d 492, 492-493 [1st Dept 2012]). As the Court of Appeals recognized in Evans, "In this setting there is no discretion involved; the lower court must apply the rule laid down by the appellate court" (id. at 503). Regardless of whether LOTC is applied to a decision by a judge of a coordinate jurisdiction or one rendered by an appellate court, it requires that the underlying legal determination on which preclusion is based was resolved on the merits (Matter of Part 60 RMBS Put-Back Litig., 155 AD3d 482, 483 [1st Dept 2017]); Ramanthan v Aharon, 109 AD3d 529, 530 [2d Dept 2013]; Mulder v Donaldson, Lufkin & Jenrette, 224 AD2d 125, 131 [1st Dept 1996]; see JP Morgan Securities, Inc. v Vigilant Ins. Co., 166 AD3d 1,8 [1st Dept 2018], lv granted in part, dismissed in part 34 NY3d 1196 [2020]; Gerschel v Christensen, 143 AD3d 555, 556 [1st Dept 2016]; Matter of Gavrin, 294 AD2d 185, 186 [1st Dept 2002]). In this way LOTC differs from res judicatawhich precludes issues that were or could have been raised (Matter of Hunter, 4 NY3d 260, 270 [2005]), but is more like collateral estoppel, which precludes only those issues that have actually been litigated (Kaufman v Eli Lily & Co., 65 NY2d 449 [1985]; Rojas v Romanoff, 186 AD3d 103, 107 [1st Dept 2020]).
We find that the issue of the borrowing statute is not barred by LOTC because the issue was not actually resolved on the prior appeal. Certainly, Natixis had a full and fair opportunity to raise the specific issue of the borrowing statute at an earlier [*5]point in the litigation, given its persistence in New York law since 1902 and that the doctrines regarding its application were not new law when Deutsche Bank (34 NY3d at 327) was decided. The actual issues raised and resolved on the prior appeal, however, were limited to the application of a six-year statute of limitations and the accrual date.
Computershare raises the alternative ground that any argument regarding the borrowing statute at this stage of the litigation has been waived. CPLR 3211(e) expressly provides that a defense based upon the statute of limitations is waived unless it is raised in a responsive pleading or in a pre-answer motion to dismiss (Horst v Brown, 72 AD3d 434 [1st Dept 2010], lv dismissed 15 NY3d 743 [2010]). At the outset we reject Natixis' argument that we cannot address and decide the waiver issue because the motion court did not reach it. The record and arguments on this issue were fully developed before the motion court.
We also reject Natixis' claim that its motion to dismiss and its original answer preserved a borrowing statute defense; they did not. The arguments made regarding the statute of limitations defense were narrowly focused on the six-year statute of limitations. We need not decide whether a more broadly worded affirmative defense would have preserved a challenge based on multiple theories of timeliness, because the defense as originally expressed in Natixis' motion to dismiss and original answer did not do so. Moreover, contrary to Natixis' argument, the presence of unresolved factual issues would not have precluded them from raising the borrowing statute earlier in the litigation (see Matter of Richmond Med. Ctr. v Daines, 101 AD3d 1434 [3d Dept 2012]).
It bears repeating that the amended answer with counterclaims was not served with permission of the court, which pursuant to CPLR 3025(b) would have required a showing that the proposed pleading was not "patently devoid of merit" (Greene v Esplanade Venture Partnership, ___ NY3d ___, 2021 NY Slip Op 01092 *3 [2021]). We also reiterate that there is nothing in this record for us to determine the merits of any statute of limitations defense based upon the borrowing statute. Consideration of the merits, however, would be irrelevant if the amended answer with counterclaim were served as of right (see Iacovangelo v Sheperd, 5 NY3d 184 [2005]).
"A party may amend [a] pleading once, without leave of court, within twenty days after its service, or at any time before the period for responding to it expires, or within 20 days after service of a pleading responding to it" (CPLR 3025[a] [emphasis added]). Natixis served its original answer with counterclaims in August 2015. Instead of serving a responsive pleading, Computershare moved pursuant to CPLR 3211(b) to dismiss Natixis' original answer with counterclaims. As a consequence, under CPLR 3211(f), Natixis' time, as of right, to serve an amended pleading was extended until 10 days after service [*6]of the notice of entry of the order on the motion to dismiss (see e.g. Toikach v Basmanov, 31 Misc 3d 615, 618 [Sup Ct, Kings County 2011]). Under the CPLR, Natixis would have had 10 days after service of the order on Computershare's motion to dismiss to serve an amended pleading. Here the amended answer with counterclaims was served in September 2018, well before the motion court's July 8, 2019 decision on the motion to dismiss. It was, therefore, a timely amendment as of right under the CPLR and there was no waiver of the statute of limitations defense based on the borrowing statute. Although the parties extensively argue prejudice, where an amendment to a pleading is allowed of right, no showing of prejudice or lack thereof is required (see CPLR 3025 [a], [b]).
The Counterclaims/Third Party Complaint Causes of Action
The underlying action asserted by Computershare against Natixis is based upon Natixis' breach of R&Ws it made in the PSA and its failure to repurchase nonconforming mortgage loans both under its direct and backstop obligation. This appeal raises the viability of Natixis' claims made against Wells Fargo, as Securities Administrator and Master Servicer under the PSA. Each counterclaim Natixis asserts in the amended answer is nearly identical to a correspondingly numbered cause of action in the ATPC. In Count I, Natixis claims that Wells Fargo, as the Securities Administrator, breached the PSA by failing to provide Natixis prompt written notice of R&W breaches. In Count II, Natixis claims that Wells Fargo, as the Master Servicer, breached the PSA by failing to monitor the Servicer to give prompt written notice of R&W breaches. It also alleges that Wells Fargo failed to monitor the Servicer's duty to maximize recovery of principal and interest on the defaulted securitized mortgages. In Count III, Natixis claims that Wells Fargo, as the Master Servicer, is responsible for contractual indemnification due to Wells Fargo's negligence and/or reckless disregard in its oversight of the Servicer. The motion court permitted Count I and II to proceed, reasoning that they were independent breach of contract claims, but dismissed Count III, reasoning that the scope of the express contractual indemnification provision relied on did not cover Natixis' claims. For the reasons set forth below we hold that the motion court properly denied the motion to dismiss Counts I and II and granted the motion to dismiss Count III in the amended answer and ATPC.
The PSA defines the parties' obligations. It also includes express indemnification provisions that allocate certain risks of non-performance. The PSA provisions relevant to the parties' disputes are described below:
PSA section 2.03 generally concerns the R&Ws and the repurchase protocols in the event any particular mortgage loan is non-conforming. The R&Ws are made by the servicer and the unaffiliated seller (here Natixis). Whereas Natixis has an obligation of repurchase, the servicer does [*7]not. Pursuant to PSA sec 2.03(d), "Upon discovery by any of the Depositor, the Unaffiliated Seller [Natixis], the Trustee, the Securities Administrator [Wells Fargo] or the Servicer . . . of a breach by the Unaffiliated Seller of any of the foregoing representations . . . . the party discovering such breach shall give prompt notice to the others." Although Wells Fargo as Master Servicer has no express contractual obligations under PSA sec 2.03, it does have an obligation to notify based upon its status as a Securities Administrator.
Article IX sets forth the primary duties of the Master Servicer. PSA § 9.01 provides that ". . . [T]he Master Servicer, on behalf of the Trustee, the Securities Administrator, the Depositor and the Certificateholders, shall monitor the performance of the Servicer under this agreement." The obligation of oversight of the Servicer is not expressly undertaken on behalf of the Unaffiliated Seller.
PSA § 9.12 contains the indemnification provisions that form the basis for many of the parties' respective arguments on this appeal. The title for the provision is "Indemnification: Third Party Claims." The first paragraph pertains to an agreement by the Master Servicer [Wells Fargo] to indemnify the Unaffiliated Seller [Natixis]. It states:
"The Master Servicer [Wells Fargo] agrees to indemnify . . . Unaffiliated Seller [Natixis] . . . and hold [it] harmless against any and all claims, losses, penalties, fines, forfeitures, legal fees and related costs, judgments and any other costs, liability, fees and expenses that . . . the Unaffiliated Seller [Natixis] . . . may sustain as a result of the Master Servicer's willful malfeasance, bad faith or negligence in the performance of its duties hereunder or by reason of its reckless disregard for its obligations and duties under this agreement[PSA] including without limitation its obligations under 3.02(e ), 3.22, 3.23 or 8.12, including without limitation, any failure by the Master Servicer to identify any subcontractor engaged by the Master Servicer . . .[T]he unaffiliated Seller [Natixis] . . .shall immediately notify the Master Servicer if a claim is made by a third party with respect to this Agreement or the Mortgage Loans which would entitle . . .the Unaffiliated Seller[Natixis] . . .to indemnification under this Section 9.12, whereupon the Master Servicer shall assume the defense of any such claim and pay all expenses in connection therewith, including counsel fees."
The particular provisions expressly listed as covered concern regulatory and reporting obligations.
Paragraph 4 of PSA § 9.12 provides that the Unaffiliated Seller [Natixis] shall indemnify the Master Servicer [Wells Fargo] as follows:
"The Unaffiliated Seller [Natixis] agrees to indemnify the Master Servicer [Wells Fargo] and hold it harmless against any and all claims, losses, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, liabilities, fees and expenses that [*8]the Master Servicer may incur or sustain in connection with, arising out of or related to a material breach of the Unaffiliated Seller's [Natixis'] repurchase obligations under Section 2.03(d)."
Certain arguments made by the parties are unique to each count, while other arguments apply to multiple counts. The arguments are, for the sake of clarity, addressed count by count.
In Count I Natixis claims that Wells Fargo, as Securities Administrator, breached the PSA by failing to provide Natixis with prompt written notice of R&W breaches. The contractual obligation of the Securities Administrator to notify the Unaffiliated Seller of its discovery of R&W breaches is expressly stated in PSA Section 2.03. We hold that the PSA provides an independent contractual obligation for the Securities Administrator to provide Natixis with notice upon its discovery of breaches of the R&Ws concerning the mortgages that were pooled pursuant to the agreement. The motion court correctly denied the motion to dismiss this count.
Wells Fargo argues the right to notification under the PSA does not give rise to an independent claim for breach of contract, because the obligation is only a condition precedent. We disagree. This Court has ruled in numerous cases that the breach of a contractual duty to provide prompt written notice of R&W breaches gives rise to an independent breach of contract claim (see e.g. Bank of N.Y. Mellon v WMC Mtge., LLC, 151 AD3d 72, 81 [1st Dept 2017]; Morgan Stanley Mtge. Loan Tr. 2006-13 ARX v Morgan Stanley Mtge. Capital Holdings, LLC, 143 AD3d 1,7 [1st Dept 2015]; Nomura Home Equity Loan, Inc. v Nomura Credit & Capital, Inc., 133 AD3d 96, 108 [1st Dept 2015]). Wells Fargo argues that this First Department jurisprudence is called into question by Court of Appeals precedent that a notice obligation in the context of RMBS litigation is a condition precedent to bringing an action, and not a substantive element of a repurchase claim (U.S. Bank N.A. v DLJ Mtge Capital, Inc., 33 NY3d 72, 77 [2019]; ACE Sec. Corp, Home Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc., 25 NY3d 581, 597-598 [2015]). Wells Fargo's argument might be persuasive if it had a repurchase obligation under the PSA. Under such a circumstance, notice could be considered a condition precedent to bringing an action for breach of R&Ws. Here, however, Wells Fargo, in its capacity as the Securities Administrator, had no such repurchase obligation. Notification under these circumstances cannot be considered a "condition precedent" to any further obligation under the PSA. We, therefore, conclude that Wells Fargo's contractual obligation to notify is not condition precedent to the remedy of repurchase, but an independent enforceable contractual obligation, which provides an independent basis for an action (Bank of N.Y. Mellon at 81 [servicer, which had no obligations under repurchase protocol, could be sued for an independent duty to notify]).
We also [*9]reject Wells Fargo's claim that although Count I is couched as a breach of contract claim, it is in reality an indemnification claim. In considering the true nature of a cause of action, the court may look beyond how the claim is labeled by a plaintiff (Bleeker St. Health & Beauty Aids, Inc. v Granite State Ins., Co., 38 AD3d 231, 233 [1st Dept 2007]). Wells Fargo argues that because Natixis is seeking damages that would not exist, but for Natixis' liability to Computershare, the claim is for indemnification, not breach of contract. Natixis alleges, "To the extent Material Breaches of any R&W's [representations and warranties] . . . exist, which Natixis . . . denies, Wells Fargo, as Securities Administrator, breached the PSA by failing to provide Natixis with prompt written notice of such breaches." Although Natixis argues that it is only seeking damages to the extent Wells Fargo's failure to timely notify "exacerbated" the damages it may have to pay for breaching the R&Ws, the damages sought in Count I are contingent on Computershare recovering damages against Natixis. This factor alone, however, does not convert this breach of contract claim into an equitable claim for indemnity.
Common-law indemnification is an equitable remedy. It is based upon the "simple fairness" that a party who has in whole or in part discharged a duty which, although may be owed by that party, should have been discharged by another (City of New York v Lead Indus. Assn., 222 AD2d 119, 124-125 [1st Dept 1996]). It is a concept which permits the shifting of a loss because failure to do so would result in the unjust enrichment of one party at the expense of another (Mas v Two Bridges Assoc., 75 NY2d 680, 690 [1990]). It often applies where the parties had a joint duty to a third party (State of N.Y. Workers' Compensation Bd. v Madden, 119 AD3d 1022, 1023-1024 [3rd Dept 2014]). Notwithstanding that the claimed damages are dependent upon Computershare's recovery against Natixis, there are no allegations supporting any unjust enrichment. Wells Fargo owes no duty to Computershare with respect to the R&Ws and there is no equitable basis why Wells Fargo and not Natixis should be answerable for the repurchase obligation. The basis of the obligation asserted against Wells Fargo in Count I is a direct and independent one, expressly found in the PSA.
In Count II Natixis claims that Wells Fargo, as the Master Servicer, breached the PSA by failing to monitor the Servicer to give prompt written notice of R&W breaches and maximize timely and complete recovery of principal and interest on the defaulted securitized loans. The obligation of the Master Servicer to supervise the Servicer is contained in PSA § 9.01. Although there is no specific provision which ties this obligation to the Unaffiliated Seller, no argument is made at this time regarding the scope of the contractual obligation.
To the extent that Wells Fargo argues that the failure to notify and, consequently the [*10]failure to supervise the Servicer's failure to notify, is a condition precedent that is nonactionable, it is rejected based on the reasoning set forth in evaluating Count I. The Master Servicer has no direct duty to notify nor to repurchase nonconforming mortgages. While under PSA § 2.03 the Servicer has a duty to notify and it also makes R&Ws, it has no repurchase obligation. Consequently, the alleged duty to supervise is an independent contractual obligation, as is the Servicer's underlying duty to notify, neither of which is a condition precedent to commencing an action to enforce the repurchasing protocol or some other PSA remedy. Likewise, the claimed obligation to monitor the Servicer to maximize recovery on the defaulted loans is not a condition precedent to the repurchase protocol under the PSA.
We also find, for the same reasons articulated with respect to Count I, Count II is not an indemnity claim masquerading as a contract claim. In terms of damages, Natixis alleges: "To the extent that any of the Alleged Material breaches exist, which Natixis . . . denies, . . . Wells Fargo, . . . as Master Servicer, breached . . . the PSA by failing to cause the Servicer to give Natixis prompt written notice thereof. . . . Wells Fargo, . . . as Master Servicer, also breached . . , the PSA by failing to [adequately supervise the Servicer]. . . . By reason of the foregoing breaches, and to the extent Natixis is liable for any damages resulting from the Alleged Material Breaches, Natixis has incurred damages in an amount to be determined at trial." As in Count I, Natixis claims it is only seeking exacerbation damages. While the damages, or some of them, may be contingent upon Computershare recovering against Natixis, the underlying claims are based upon independent contractual obligations, not equity. There are no allegations that would make it inequitable for Natixis to answer in damages for its failure to fulfill the repurchase protocol it agreed to in the PSA instead of Wells Fargo.
An additional argument made by Wells Fargo in favor of dismissing Count II is that such claim is prohibited under the contractual indemnification provisions in PSA § 9.12. Paragraph 4 outlines Natixis' obligation to indemnify Wells Fargo, as Master Servicer, for expenses, etc., incurred "in connection with, arising out of, or related to" breach of Natixis' repurchase obligations under PSA 2.03. The core of Wells Fargo's argument is that Natixis will have to indemnify Wells Fargo for any recovery it obtains against Wells Fargo in Count II, and therefore, the claim is "non-sensical."
The indemnification provision relied upon does not warrant dismissal of Count II. The provision does not cover intra-party claims. In general, an indemnification contract "will be enforced so long as the intent to assume such role is sufficiently clear and unambiguous" (Suazo v Maple Ridge Assoc., LLC., 85 AD3d 459, 460 [1st Dept 2011]). Where a party is under no legal duty [*11]to indemnify, any contract assuming that obligation must be strictly construed (Hooper Assoc. v AGS Computers, 74 NY2d 487, 491 [1989]). Notwithstanding the strict construction rule enunciated in Hooper, courts have routinely held that where the indemnification is broad, in the absence of limiting language, both intra-party and third party claims are covered (Crossroads ABL LLC v Canaras Capital Mgt. LLC, 105 AD3d 645, 646 [1st Dept 2013]; see WSA Group, PE- PC v DKI Eng. & Consulting, USA PC, 178 AD3d 1320, 1323-1324 [3d Dept 2019]; Healthnow N.Y., Inc. v David Home Bldrs., Inc., 176 AD3d 1602, 1605 [4th Dept 2019]). At bar, however, the indemnification is limited to Natixis' repurchase obligations under PSA section 2.03(d). Because neither the Master Servicer nor the Servicer have any obligation of repurchase under this provision, the limitation is clearly only referable to claims by others, or third-party claims.
Wells Fargo's argument also fails because the scope of the indemnification provision is limited to Natixis' repurchase obligations, but Count II is based upon Wells Fargo's independent contractual obligations to supervise the Servicer.
Count III in the amended answer and the third cause of action in the ATPC claim is that Wells Fargo, and Computershare as its designee, have a contractual obligation to indemnify Natixis for any liability it may have for the claims made against it in this action. The allegations of wrongful conduct against Natixis in the main action include Natixis' own breach of R&Ws and its failure to fulfill its backstop obligation. In its brief, Natixis claims that this claim is only limited to its backstop obligation under the PSA.[FN2] Wells Fargo argues that the contractual indemnification provision only applies when the liability is based upon Wells Fargo's conduct. We find that Count III was properly dismissed.
The contractual indemnity flowing from Wells Fargo to Natixis in the PSA, like the contractual indemnity flowing from Natixis to Wells Fargo, does not apply to intra party claims. Here the expressly stated list of claims covered by the indemnity concern regulatory and reporting requirements. The obligations, for the most part flow to the Depositor. They do not flow to Natixis. The provision provides only for notification of third-party claims. Although the PSA qualifies the list as nonexclusive, there is nothing in this indemnity provision that is expressly referable to intra-party claims. For these reasons, it does not meet the strict standard of Hooper, nor does it qualify as a broad indemnity under Crossroads.
In any event, the express language of the PSA limits indemnification to instances where Wells Fargo, as the Master Servicer, has been negligent. In this case, Natixis is not facing claims as a result of Wells Fargo's negligence; rather, plaintiff's claims are based on Natixis' own (alleged) misconduct.
Accordingly, the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered [*12]on or about July 10, 2019, which, insofar as appealed from as limited by the briefs, granted plaintiff's motion to dismiss the third affirmative defense in the amended answer, granted counterclaim and third-party defendant Wells Fargo Bank, N.A.'s motion to dismiss the third counterclaim and the third cause of action in the amended third-party complaint (ATPC), and denied Wells Fargo's motion to dismiss the first and second counterclaims and the first and second causes of action in the ATPC should be modified, on the law, to deny plaintiff's motion to dismiss the third affirmative defense, and otherwise affirmed, without costs.
Order, Supreme Court, New York County (Marcy S. Friedman, J.), entered on or about July 10, 2019, unanimously modified, on the law, to deny plaintiff's motion to dismiss the third affirmative defense, and otherwise affirmed, without costs.
Opinion by Gische, J. All concur.
Manzanet-Daniels, J.P., Gische, González, Shulman, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 13, 2021



Footnotes

Footnote 1: The only difference is the parties against whom the claims are asserted, in that Computershare is a party to the first counterclaim in its capacity as an alleged representative and designee of Wells Fargo.

Footnote 2:"[H]ere . . . Natixis is seeking indemnification solely in connection with the alleged breaches of R&Ws made by the Originators and for such incremental losses arising from Wells Fargo's negligent conduct."